[No. 4251.   Decided July 16, 1902.]

ALBERTA CLARK, *Appellant, v.* NORTHERN PACIFIC RAIL-WAY COMPANY, *Respondent.*

DEATH OF CHILD — ACTION BY MOTHER.

Under Bal. Code, § 4829, which provides that "a father, or in case of the death or desertion of his family the mother, may maintain an action as plaintiff for the injury or death of a child," the mother is entitled to maintain such action, where the parents

had been divorced and the deceased child had been awarded the husband, who had returned him to the mother after a period of two weeks with a promise to support him, but wholly neglected to contribute thereto, and had disappeared, casting the duty of support and education upon the child's mother.

NEGLIGENCE — IMPLIED INVITATION ON DANGEROUS PREMISES.

The rule making the owner of premises liable for injuries received as the result of implied invitation to children to enter upon dangerous premises is inapplicable in the case of a lease by a railway company of land on one side of its switch yard for a circus exhibition, to which a short cut could be taken through the yards, when there was a well traveled highway leading around the switch yard to the circus grounds, and the switch yard was enclosed by a fence, contained no other defect or danger than that inherent to moving trains, and the injured child had been twice warned to get off the premises by switchmen, while he was attempting to cross.

SAME — EXCLUSION OF EVIDENCE — HARMLESS ERROR.

The exclusion of a show bill, offered in evidence for the purpose of establishing an inducement to the public to go upon the railway company's premises was harmless, if error at all, when the company had admitted in its answer that it leased the grounds for show purposes, thereby admitting notice that the public would be in attendance.

Appeal from Superior Court, Pierce County.—Hon. THAD HUSTON, Judge. Affirmed.

*Govnor Teats* and *E. W. Taylor,* for appellant.

*B. S. Grosscup, James F. McElroy* and *A. G. Avery,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—Appellant instituted this action against respondent to recover damages on account of the death of her son, which, it is alleged, was caused by the wrongful and negligent act of respondent. At the trial the court granted a motion for non-suit. The motion was based upon two grounds: First, that appellant had failed to show

such title or right as enabled her to maintain the action; and, second, that no negligence of respondent was proven. We will first discuss the branch of the motion relating to appellant's right to maintain the action.

The accident which caused immediate death occurred August 6, 1901. The deceased, Oscar Perry Dix, lacked a little more than one month of being twelve years of age. He was the son of Elihu Dix and the appellant, who were formerly husband and wife. Some time prior to June, 1897, the parents separated; the appellant keeping the two children of the marriage,—the son above named and a daughter. On the 14th of June, 1897, appellant procured a decree of divorce from her said husband, and by the terms of the decree the care and custody of the daughter was awarded to appellant; and that of the son to the husband. After the separation, and before the divorce, the mother mainly supported both the children, the husband having contributed about $20 toward their support. After the divorce the father took the boy and kept him about two weeks, when he brought him back to his mother and told her he could not get along with him, and said if she would keep him he would support him. Soon afterwards the husband gave the mother $10 toward the support of the boy, and has never contributed any sum since. The mother, who afterwards remarried, continued to support the boy for a period of more than three years, and until the time of his death. The location of the father is unknown to her, and she has been unable to discover where he is. Under these circumstances, the respondent contends that appellant cannot maintain this action, for the reason that the father was charged with the lawful care and custody of the boy. Section 4829, Bal. Code, provides as follows:

"A father, or in case of the death or desertion of his family the mother, may maintain an action as plaintiff for the injury or death of a child, and a guardian for the injury or death of his ward."

It will be observed that by the terms of the statute the mother may maintain the action in the event the father has deserted the family. It is contended by respondent that by the divorce the family status was broken, and that there can be no longer a desertion of the family, within the meaning of the statute. The facts as stated, we think, show at least an abandonment of the boy by the father. He not only withheld from the boy his own companionship, but wholly neglected to contribute to his support. It was his primary duty to support his child, independently of that cast upon him by the decree of divorce. The boy being left with his mother, the duty of his support and education was cast upon her. As a natural son, he was, in legal contemplation, a part of his father's family. The family status between mother and child, as constituted by natural relationship, was not broken by the divorce, and their companionship as members of the same household continued, with only an interruption of two weeks. The family status as thus constituted was left by the father without any contribution on his part toward its support. This we believe was not only an abandonment of the child, but also of the family, within the meaning of the statute. By his abandonment the father has forfeited his right to maintain this action, and it belongs to the mother. The first ground stated in the motion for non-suit should therefore have been denied. Whether the superior court intended to deny the motion on said ground does not appear from the record. It may have been the intention to grant the motion upon the other ground only.

We will now consider the second ground of the motion for non-suit,—that no negligence of respondent was proven. Deceased met his death by being struck by a freight train in the switch yards of respondent in the city of Tacoma. On the day of his death a circus show exhibited in Tacoma, and occupied with its tents grounds belonging to respondent, lying to the north of the system of tracks in the switch yards, and near the east end thereof. The space occupied by the tents and that immediately around them, together with a similar space to the east and west thereof, was unoccupied by tracks. This unoccupied space was to the north and parallel with the system of tracks. Persons being in the switch yards could approach the tents over this space without walking upon or among the tracks. Similar exhibitions had been given upon the same grounds before, and some persons in going thereto entered the switch yards toward the westerly end, and crossed over the tracks toward the show grounds. The yards are principally inclosed by a fence. Parallel with the fence on the south is a street, along which runs a street railway, which extends east almost as far as the switch yards extend. The traveled highway for reaching the show grounds was to go out said street by a street car or otherwise. Just beyond the terminus of the street car line the street is intersected by a county road running to the northeast around the easterly end of the switch yards, and which passes near the show grounds on the east. It appears that some persons sought to avoid this longer route over the traveled highway by entering the switch yards and crossing the tracks, thus approaching the tents from the west or southwest. In the center of the yards were two main tracks, and on the south of these was a lead track for the switches, and connecting with it were nineteen switches leading diagonally therefrom. To the

north of the main tracks were a number of others running practically parallel therewith. Over this system of tracks respondent daily moved many cars and locomotives. On the morning of the accident the deceased and two other boys about his age were on their way to the show grounds to see the preparations for the parade which was to precede the exhibition. They were hurrying to reach the grounds, and passed into the switch yard at the westerly end thereof. They were met by a switchman, who at first ordered them away, but, upon their urgent request and promise to be careful, he permitted them to pass him. They soon met another switchman, who told them to get out of the way and go around. He also told them not to go that way, as they might get killed. They, however, went aside upon some tracks upon the north side, that were not much used, and where the grass grew. The deceased boy was barefooted, and remarked to the other boys that the cinders hurt his feet. A freight engine with some cars moving easterly toward the show grounds came along on the aforesaid lead track to the south of where the boys were walking. The deceased ran across the intervening tracks and jumped upon one of the moving flat cars. One of the other boys told him not to do it. Just in the rear of the switch train, but upon the main track, came an outgoing freight train, going east. The deceased remained upon the flat car until it was about opposite the show grounds, when he jumped off; and while upon or in the act of crossing the main track toward the show grounds the before-mentioned freight train, being but a short distance away when he entered upon the track, struck him and killed him.

It is not contended by appellant that there was negligence in the operation of the train which caused the death, but she urges that respondent maintained a dangerous place, with danger inherent in the premises and in the

operation thereof; that in the midst of this dangerous place respondent permitted the show to exhibit, and that the boys and. children were attracted upon and over the premises thereby; that the people and children especially went through these premises upon the invitation and inducement held out by respondent in permitting the show to be held upon its premises; that the deceased was not a trespasser, but an invited visitor; and that the danger was known to respondent and unknown to the boy. The contention, in short, is that respondent's negligence consisted in permitting the show to be located upon these premises without taking proper precaution to protect the deceased boy and others from danger. If the show grounds had not been owned and controlled by respondent, then no liability could have arisen, since it was operating its own property in the customary and lawful way, without negligence. Does the fact that the grounds happened to belong to respondent change its obligation in the premises? There was ample room for the purposes of the show without any interference from the switch grounds. There was a well-traveled public highway leading to the show grounds, without making it necessary to cross the switch yards. It is a matter of common knowledge that such switch grounds cannot be operated without probable danger to casual strangers who may happen upon them, and that the general public are not invited or expected to come upon them. The public could not have expected that respondent would cease operating its trains in order to extend the convenience of a shorter way to the show grounds. In leaving the traveled way to cross these grounds, they were chargeable with knowledge of the attendant danger. The deceased boy knew of the danger. He was an intelligent, active boy, about twelve years of age. He had theretofore spent much time in selling papers, and evidently

10—29 Wash.

knew much of the city and its environment. His boy companions testified that they all knew of the danger. They and the deceased knew they were not invited upon the grounds, for the reason that they were twice told by representatives of respondent not to go there, because of the danger. At the encounter with the last switchman he gave peremptory command that they should leave, but they disregarded the command. It would seem that this repeated precaution from respondent was a careful effort to prevent the opportunity for danger, and more could not well have been done, except by resort to forcible expulsion. It is true that, while one is under no obligation to keep his premises in safe condition for the visits of trespassers, yet if "he expressly or by implication invites others to come upon his premises, whether for business of for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit." Cooley, Torts (2d ed.), p. 718.

The above is a generally recognized rule, and is fully sustained by authorities cited by appellant. If the deceased boy came within the class of guests invited expressly or by implication, then the authorities are in point here. It is not conceivable, however, that one should in the first instance understand that he was invited to cross the switch tracks which were in constant use, merely because a show was exhibiting near by, and when other plain and safe ways of approach were at hand. In any event, when this boy was told not to go there, he knew he was not invited; and instead of going the safe way as advised by respondent, he rushed into immediate danger. The cases cited by appellant related to some inherent defect in the prem-

ises, which ought not to have existed, but which was negligently allowed to exist.

In the case of *Bennett v. Railroad Co.,* 102 U. S. 577, the injured person fell through a hole in the depot floor, which had been left unguarded and unlighted. In *Powers v. Harlow,* 53 Mich. 507 (19 N. W. 257, 51 Am. Rep. 154), dynamite was left exposed upon the premises, where children ignorant of its nature could easily find it and handle it. In *Railroad Co. v. Morey,* 47 Ohio St. 207 (24 N. E. 269), a ditch was left unguarded and unlighted in the night time. Similar conditions existed in *Curtis v. Kiley,* 153 Mass. 123 (26 N. E. 421). In *Tucker v. Draper,* 62 Neb. 66 (86 N. W. 917, 54 L. R. A. 321), a small child was killed by falling into an open and unguarded well. The conditions considered in the above cases were inherent defects in the premises and were hidden from and unknown to the injured persons. In the case at bar the premises were not defective. There were no hidden dangers inherent in them, and they were being used for lawful purposes. Any danger which existed was open and apparent, and was the unavoidable consequence of the customary and lawful use of the premises if one placed himself in a position to encounter it.

Appellant also cites what are known as the "turntable cases." These cases are based upon the theory that a turntable is a machine of such a nature as to attract children to play with it, and, being inherently dangerous for children to handle, negligence is predicated upon the failure to lock it or securely fasten it so that it cannot be moved by children. The same principle has been applied where other structures or conditions existed, but the doctrine has not been uniformly adopted by American courts, and it has, indeed, been severely criticized. In Beach on Contributory Negligence (3d ed.), § 51a, the author observes that

the trend of the most recent decisions is against it, and many cases are cited. This court applied the rule in a turntable case in *Ilwaco Ry. & Nav. Co. v. Hedrick,* 1 Wash. 446 (25 Pac. 335, 22 Am. St. Rep. 169); but, in view of the more modern tendency of the courts, we should, however, hesitate to extend the rule as one of general application to other conditions. For especially forcible reasoning upon this subject we refer to *Delaware, L. & W. R. R. Co. v. Reich,* 61 N. J. Law, 635 (40 Atl. 682, 41 L. R. A. 831, 68 Am. St. Rep. 727). The respondent in the case at bar had not placed upon its premises a dangerous machine or device, that was in its nature and at once particularly attractive to children. The deceased boy neither meddled with nor was he injured by any such instrument. The attractive thing which it is claimed respondent permitted upon its premises was the show. There was, however, nothing dangerous in the show itself, and the boy was not injured by anything in or about it. The case therefore materially differs from *Richmond & M. Ry. Co. v. Moore's Admr.,* 94 Va. 493 (27 S. E. 70, 37 L. R. A. 258), cited by appellant. There a street railway company advertised a balloon ascension at a park owned by it. A person in attendance was killed by a falling pole used to suspend the balloon while being inflated. The company was held liable because no warning was given that the pole would fall at that time and the people were allowed to gather near. The danger inhered in the operation of the thing itself, which was the immediate inducement for people to go upon the grounds. It was not occasioned by the lawful use and operation of some permanent machinery upon the premises, and wholly disconnected from the thing which was the attraction. The case of *Thompson v. Lowell, etc., St. Ry. Co.,* 170 Mass. 577 (49 N. E. 913, 40 L. R. A. 345, 64 Am. St. Rep. 323), involved conditions

similar to those existing in the above case. We are not aware of any case which holds that the operation of trains over railroad premises makes them dangerous machines, within the meaning of the turntable cases. It was expressly held that they are not such, within the meaning of that rule, in *Barney v. Hannibal & St. J. Ry. Co.,* 126 Mo. 372 (28 S. W. 1069, 26 L. R. A. 847, and *Catlett v. Railway Co.,* 57 Ark. 461 (21 S. W. 1062, 38 Am. St. Rep. 254).

We are therefore unable to find that negligence on the part of respondent was shown. The accident was an unfortunate one for appellant, as the mother of the boy; but we are unable to see that respondent is chargeable therewith when viewed in the light of safe and sound principles. We believe the court did not err in granting the non-suit on the ground that negligence of respondent was not shown.

Error is assigned upon the court's refusal to admit certain evidence, in the way of an identified show bill, offered for the purpose of showing an inducement to the public to go upon respondent's premises. We are unable to find that the offered exhibit disclosed the place where the coming show would exhibit, further than it would be in the city of Tacoma. It was, however, admitted by the answer that the grounds were leased for the purposes of the show, which showed that respondent had notice that the public would be in attendance. We think the offered evidence was therefore immaterial.

Believing that the court did not err, the judgment is affirmed.

REAVIS, C. J., and FULLERTON, ANDERS, MOUNT and DUNBAR, JJ., concur.