## ANNEAR v. SWARTZ.

No. 4280.  Opinion Filed April 27, 1915.

(148 Pac. 706.)

1. APPEAL AND ERROR—Review—Demurrer to Evidence. On a demurrer to evidence, it must be taken that he who interposes it admits all the facts which the evidence in the slightest degree tends to prove, and all the inferences or conclusions which may be reasonably and logically drawn therefrom, and the court will not weigh conflicting evidence, but will treat as withdrawn all evidence which is most favorable to the party demurring.

2. WEAPONS—Injuries from Discharge of Gun—Liability. Where a person is injured by the accidental discharge of a gun in the hands of another, the test of liability is not whether the injury was accidentally inflicted, but whether the defendant is free from all blame.

3. WEAPONS—Injuries from Discharge of Gun—Jury Question. So, where two persons were hunting together, and the gun of the de-

fendant had a hammer, the thumb hold of which was worn smooth, and the defendant, seeing the plaintiff and knowing the gun was pointed towards him, attempts to let down the hammer, which slips through his fingers and the gun is thereby discharged, and the plaintiff injured, held, sufficient evidence to take the case to the jury on the issue of negligence, and it was error to sustain a demurrer thereto .

(Syllabus by Devereaux, C.)

*Error from District Court, Major County;*

*Jas. B. Cullison, Judge.*

. Action by W. J. Annear, an infant under the age of 21 years, by Esther E. Annear, his next friend, against D. L. R. Swartz. Judgment for defendant, and plaintiff brings error. Reversed.

The petition alleges, in substance, that on the 3d day of March, 1911, the defendant carelessly, negligently, and recklessly pointed toward the plaintiff a loaded shotgun, and so carelessly, negligently, and recklessly handled the gun that he caused the same to be discharged at the plaintiff, by which the plaintiff was wounded in the ankle so severely that it was necessary to amputate the leg. The answer was a general denial. The evidence tends to show that the plaintiff was an employee of the defendant, and on the day of the accident, the two went duck hunting, that there was only one gun, which belonged to the defendant, and this gun had a small hammer, and that the thumb grip was worn, to use the language of the witness, "pretty slick." After arriving at the point where they expected to find the ducks, the plaintiff and defendant laid down together, about two or three feet apart, in thin grass about 18 inches high. After remaining for some time ducks flew over them, but too high to shoot, although the defendant cocked the gun and made ready to fire at them. The ducks lighted in a pond some little distance from where the parties were, and the plaintiff suggested to the defendant that they go to this pond, and got up from the ground and started toward the other pond; that in getting up the plain-

tiff not only stated to the defendant that they had better go to the other pond, but made sufficient noise to have attracted the attention of the defendant, and that when plaintiff got up from the ground and started toward the other pond the defendant was looking at him. After going about five or six feet, and while the defendant was still lying on the ground, plaintiff turned to see why he was not coming, as he had not heard him get up, and just as he turned the gun fired, and the plaintiff was wounded in the ankle so severely as to make an amputation of the foot necessary. This took place in the daytime, and the defendant was looking at the plaintiff when he got up, and that the defendant was looking in his direction at the time the gun exploded. There was also evidence tending to show that the defendant stated that he started to let down the hammer of the gun, and it slipped through his fingers, thus causing the gun to fire. There was a demurrer to this evidence, which was sustained by the court, and judgment thereon for the defendant, and the plaintiff has brought the case on error to this court.

*Brady & Willis,* for plaintiff in error.

*McKeever & Church,* for defendant in error.

DEVEREUX, C. (after stating the facts as above). There is a large amount of testimony in the record, but it is not necessary to be stated, for, as decided by the Supreme Court of this state, in *Scully v. Williamson,* 26 Okla. 19, 108 Pac. 395, 27 L. R. A. (N. S.) 108, Ann. Cas. 1912A, 1265:

"When a demurrer to the evidence is interposed, it must be taken that he who interposes it admits all the facts which the evidence in the slightest degree tends to prove, and all the inferences or conclusions which may be reasonably and logically drawn therefrom, and the court will not weigh conflicting evidence, but will treat, as withdrawn, all the evidence which is most favorable to the party demurring."

The question, therefore, presented is whether there was any evidence to go to the jury under this rule.

At common law, where one was injured by the discharge of a gun, or other firearms, in the hands of another, the action was for trespass *vi et armis,* and the only defense available was that the defendant was utterly without fault. 1 Thomp. on Neg. sec. 779; *Weaver v. Ward,* Hobart, 134. The modern doctrine, however has modified this rule, and places the liability of one who injures another through the negligent discharge of firearms on the footing of negligence, and not on the footing of trespass. However, in 1 Thomp. on Neg. sec. 780, it is said that it may be doubted whether there is much substantial difference in the grounds of liability. In the same section it is said by Mr. Thompson, in speaking of the injury of one by the discharge of a gun in the hands of another:

"Here, as in other cases, the test of the liability of the defendant is whether, in what he did, he failed to exercise reasonable or ordinary care, and here, as in other cases, the reasonable care which persons using firearms are bound to take in order to avoid injury to others is a care proportionate to the probability of injury; and the principal is applicable that he who does what is more than ordinarily dangerous is bound to use more than ordinary care. Whether in case of an injury proceeding from such cause ordinary or reasonable care was used by the person inflicting it will, in almost every case, present a question for the jury."

In *Morgan v. Cox,* 22 Mo. 373, 66 Am. Dec. 623, the suit was brought for the negligent shooting of the plaintiff's slave, and the only question was as to the fact of negligence. The defendant had been out with his gun, and was asked by plaintiff to aid him and his servant in driving an unruly cow across the Osage river; and while so doing he punched the cow with his loaded gun, and in replacing it across his horse the hammer struck the saddle, as he supposed, and caused it to fire, by which the plaintiff's servant was shot and killed. There was a verdict and judgment for the plaintiff, holding this to be negligence, which was affirmed by the court. In the opinion, it is said:

The defendant here had a dangerous instrument in his hands, and it was his duty to take proportionate care in handling it. The punching of the cow was a careless use of it, surrounded as he· was by the others; and, although the accident did not then occur, it was no doubt occasioned by accidently striking the hammer against the saddle, upon returning the gun to the horizontal position in which the defendant had carried it, without elevating the muzzle. The accident, in all probability, would not have occured had the defendant taken that care of the gun that it was his duty to have taken of it while it was loaded and he himself was surrounded by those whom it might injure if it accidentally fired."

This is strong authority in the case at bar. The defendant in this case is presumed, from the evidence, to have known the condition of the gun and the hammer, and that it was worn "slick." He was looking toward the plaintiff at the time the gun fired. It is a reasonable deduction from this evidence that he saw the plaintiff and knew where he was, and knew that the gun was pointing directly towards him, and that he took no precaution to divert the weapon, and knowing the condition of the hammer he attempted to let it down while the gun was pointed directly at the plaintiff's feet. If it was evidence of negligence, as held by the court in *Morgan v. Cox, supra,* that the gun was discharged while placing it on ·the saddle after punching the cow, then certainly it is evidence of negligence that the defendant attempted to let the hammer down while the gun was pointing at the plaintiff.

In *McCleary v. Frantz,* 160 Pa. 539, 28 Atl. 929, a question very nearly the same as the case at bar was presented. In that case four persons were hunting together and one separated from the others for some distance, and while attempting to join them, and just as he was coming over the hill, the defendant fired his gun at a rabbit, and some of the shot struck the plaintiff in the face, putting out an eye. The court was asked to charge the jury in that case:

"Even if the jury believe the defendant fired the shot which

struck the plaintiff, yet if at the time the shot was fired the defendant by reason of the growth of grass and weeds on the summit of the hill, could not see the plaintiff, their verdict must be for the defendant."

This charge was refused, the trial court saying to the jury:

"I leave it for you to say, under the circumstances of the case, whether or not the defendant exercised the care required by law."

The syllabus in this case clearly states the holding of the court, and is as follows:

"Where the standard of duty is variable and shifts with the facts developed on the trial, it is a question of fact for the jury to determine, under the circumstances, whether a reasonable and proper degree of care was exercised. In an action to recover damages for personal injuries caused by the alleged negligent firing of a shotgun, it is proper to submit the case to the jury where there is evidence that plaintiff and defendant and two other persons went hunting; that they discussed the danger of four persons hunting together; that, after the discussion, three of the party, leaving the plaintiff behind, crossed a ridge, over which plaintiff would have to go in order to rejoin them; and that defendant, having stirred up a rabbit, turned and shot his gun backwards towards the crest of the hill, just as plaintiff was about to cross, thereby wounding him."

The facts in the case just cited were stronger for the defendant than in the case at bar, because there was no evidence in that case that the defendant saw the plaintiff when he fired at the rabbit, while in the case at bar there is not only evidence that the defendant saw the plaintiff when he attempted to uncock the gun, but that the hammer was in such a condition that a reasonable inference may be drawn from it that the defendant knew it was likely, or at least possible, that it might be discharged by slipping from his thumb while attempting to let it down.

In *Judd v. Ballard,* 66 Vt. 668, 30 Atl. 96, plaintiff and defendant were riding in a wagon, and while the defendant was

closing the hammer preparatory to returning the revolver to his pocket, it was discharged, injuring the plaintiff. The court say:

"Upon the facts presented the defendant is clearly answerable for the damages sustained by the plaintiff. The shooting of the plaintiff was an accident, but in no sense an unavoidable accident. It would not have occured but for the defendant's carelessness. The test of liability is not whether the injury was accidentally inflicted, but whether the defendant was free from blame."

Numerous other authorities may be cited along this line, but the above are sufficient to show the general rule in cases of this kind.

The defendant in error has cited the case of *Sutton v. Bonnett,* 114 Ind. 243, 16 N. E. 180, but that case is clearly distinguishable, for the question was submitted to the jury, who found that the defendant did not see the plaintiff when the pistol was fired. That is not authority in the case at bar, where, for the purpose of this demurrer, it must be taken as true that the defendant did see the plaintiff, and that the gun was pointed at him, as shown beyond controversy by the fact that his foot was so injured that it had to be amputated.

The defendant in error has also cited the case of *Siefker v. Paysee,* 115 La. 954, 40 South. 366, 4 L. R. A. (N. S.) 119. This case is not an authority that the evidence under consideration in the case at bar was not sufficient to go to the jury. That case was submitted to the judge, without a jury, who found for the defendant. In the second paragraph of the syllabus it is said:

"Where persons are gunning together, and an accident occurs, the negligence, to render one liable, must be in its nature gross. Fault must be shown."

If by this the court means that in cases of this kind the defendant is only liable in cases of gross negligence, it is opposed by the overwhelming weight of authority and reason, and we

cannot follow it. It will also be noted that two of the judges dissented from the opinion of the majority in this case.

In conclusion we think there was evidence to go to the jury, of negligence. The fact that the hammer of the gun was short; that it was worn so as to be smooth and "slick"; the fact that the defendant knew that the plaintiff had started off; that he attempted to let the hammer down on the loaded gun when it was pointed directly at the plaintiff, whom he saw—was evidence sufficient to take this case to the jury on the question of negligence.

We, therefore, recommend that the judgment be reversed, and a new trial granted.

By the Court: It is so ordered.