[Civ. No. 4287. Third Appellate District.—May 28, 1931.]

DAMIANO FRAZZINI, Respondent, v. LOUISE CABLE, Appellant.

 

C. F. Cable and Lester Godward for Appellant.

Clarke & Bowker and James E. Neville for Respondent.

MR. JUSTICE Pro Tem. BURROUGHS Delivered the Opinion of the Court.—This action was brought by the plaintiff Damiano Frazzini against Louise Cable and C. F. Cable to recover damages for the death of his minor son, Renardo Frazzini, through the alleged negligence of the Cables. The cause was tried by the court without a jury, findings of fact and conclusions of law were filed and judgment thereon entered in favor of the plaintiff and against defendant Louise Cable in the sum of $10,500. From the judgment said defendant Louise Cable appeals.

The judgment is silent concerning the defendant C. F. Cable. There is no appeal by him. The action is brought under the provisions of section 376 of the Code of Civil Procedure.

██ The first point which requires consideration is appellant's contention that the plaintiff is not a proper party plaintiff. This claim arises from the following undisputed facts appearing in the record: The plaintiff Damiano Frazzini and one Josephine Frazzini were married on January 12, 1905, in the city of Denver, state of Colorado. The issue of said marriage was six children; the father and mother separated. The father came to California with one of the sons named Albino, and they have both resided in this state since that time. On December 14, 1923, in an action which had been brought by Josephine Frazzini against Damiano Frazzini, in the city of Denver, Colorado, findings of fact were filed in which it was found that Damiano Frazzini had for more than one year prior to the date thereof, failed to make reasonable provision for the support of his wife, and that for more than one year prior to the institution of that action, he had wilfully deserted his wife without cause therefor. The custody of all of the children of the marriage, excepting Albino, was awarded to the plaintiff in said action. On June 16, 1924, said findings were followed by a decree of the court following the lines of the findings above referred to. Said decree has never been set aside, or modified, but

remains in full force and effect in so far as the records of the Colorado court are concerned. In the month of June, 1924, Damiano Frazzini, the plaintiff in this action, visited Denver, Colorado, and with the consent of his former wife, who had been awarded the custody of the children by the decree of divorce, brought two of them to his home in California, where with the son already residing with him, they have since lived in the city of Los Angeles. He kept the home, paid all of the expenses of maintaining the same, and exercised full parental control over all three of said children. The mother never saw the children thereafter, never contributed anything to their support, nor paid any further attention to them. On June 12, 1927, Renardo, one of the sons, who had been awarded to the custody of the mother and who was one of the children residing with the father in Los Angeles, was killed by the defendant Louise Cable and it is in damages for his death that the plaintiff recovered the sum of $10,000, and the balance of $500 for funeral expenses.

There is no question that this character of action is purely statutory and was not recognized by the common law. It is therefore claimed by the appellant that under section 376 of the Code of Civil Procedure, the mother having been awarded the custody of the minor child, because of the desertion of the father, the mother is the proper party plaintiff to the exclusion of the father. So far as is necessary to this decision said section 376 reads as follows: "The father, or in case of his death or desertion of his family, the mother, may maintain an action for the injury or death of a minor child, and a guardian for the injury or death of his ward, when such injury or death is caused by the wrongful act or neglect of another. . . ."

It seems to be conceded by counsel that the courts of this state have never been called upon to interpret this section of the code in light of the facts above referred to. It is claimed by appellant that because the father deserted his family from about 1921 until 1924, and the said desertion had been judicially fixed by the court of Colorado, its decree in that action is binding and until modified by that court, or by some proceeding in another court of competent jurisdiction, it remains in full force and effect, even though the conditions and circumstances of the parties may have

changed. We are, however, of the opinion that section 376, *supra,* has reference to the conditions existing at the time of the death of the minor child and that the decree of divorce is not binding where conditions have so changed as to bring the father within the rule of said section. We think that this construction is sustained by the section itself, and also by decisions of this and other jurisdictions.

Such is the construction placed upon sections 60 and 61 of the Code of Civil Procedure of Porto Rico by the United States Circuit Court of Appeals, First Circuit, in *American R. Co. of Porto Rico* v. *Santiago,* 9 Fed. (2d) 753. Said section 60 of said Code of Porto Rico, so far as material here, provides: "A father, or in case of his death, or desertion of his family, the mother, may maintain an action for the . . . death of a minor child, . . . when such . . . death is caused by the wrongful act or neglect of another." This section is identical with section 376 of the Code of Civil Procedure of California. It appears from the facts of the case cited that a motion to dismiss the complaint was made at the close of the evidence, "because one Juan Ramon Santiago, the father, had no right of action, as his wife, Juana Arroyo, had obtained a divorce from him on October 18, 1913, about 8 years and five months prior to the death of the son and that the court granting the divorce awarded the custody of the son to the wife, together with the *patria potestas*" (parental control). In deciding the objection thus raised the court said:

"The question raised by the second motion is whether or not a directed verdict should have been directed for the defendant, so far as Juan Ramon Santiago was concerned, on the ground that he had no right to maintain the action (a) because the evidence showed that the wife had obtained a divorce eight years prior to the accident and had been awarded the custody of their minor child, Ramon, together with the *patria potestas.*

"On the question of the right of the father to maintain the action for the death of his minor child section 60 expressly provides that 'a father, or in case of his death, or desertion of his family, the mother may maintain' it. The evidence in the case shows that the father is alive; that the mother had, some eight years prior to the son's death, obtained a divorce with a right to the parental control and

custody of the child. It further shows that there were several children in the family; that, after obtaining the divorce, the mother left the children with the father and went to Santo Domingo where she remarried; and that the father thereafter maintained a home for and supported and educated the children, including Ramon.

"On this evidence, notwithstanding the divorce, it could not be found that the father had deserted his family, so as to deprive him of the right to maintain the action and give it to the mother, within the terms of section 60.

"This question was before the court in *Clark* v. *Northern Pac. Ry.*, 29 Wash. 139 [59 L. R. A. 508, 69 Pac. 636]. The provision of the code there under consideration was identical with that of section 60 of the Porto Rico Code. The action was brought by the mother for the death of her minor son, and it was objected that she had failed to show any right enabling her to maintain the action. The accident occurred in 1901. In 1897 the parents were divorced, and by the terms of the decree the custody of the son was awarded to the father. The father kept the boy about two weeks, then brought him back to the mother and said, if she would keep him, he would provide for his support. He paid the mother $10 towards the support of the son, and then went away and was not heard from thereafter. He made no further contribution. At the time of the accident the boy had been living with and supported by the mother for a period of three years. In that case it was contended by the defendant that by the divorce the family status was broken, so there could be no longer a desertion of the family within the meaning of the statute; but the court held that on the facts in the case it appeared that the father had abandoned the boy, and the family status as 'between the mother and child, as constituted by natural relationship, was not broken by the divorce, and their comradeship as members of the same household continued'; that 'the family status as thus constituted was left by the father without any contribution on his part towards its support'; and that it 'was not only an abandonment of the child, but also of the family, within the meaning of the statute.' . . .

"As on the facts in this case the father cannot be found and held to have deserted the family, the right to maintain an action remained in him."

*Clark* v. *Northern Pac. Ry. Co., supra,* cited in the case of *American R. Co. of Porto Rico* v. *Santiago, supra,* is also in point. In that case it appears that in an action for divorce the custody of the minor child had been awarded to the father; after having the child for a short time he returned it to the mother with a statement that she could take care of the child, and he would pay her $10 per week for its maintenance. He then deserted and made no further contribution to its support. Notwithstanding the fact that the legal custody of the child had been awarded to the father and the decree in said action was still in full force and effect, the court held that the father's conduct constituted a desertion of his family and the mother was permitted to sue for the death of the child, irrespective of the decree of divorce. Comparing these facts with the case at bar, here the father was in the full custody and control of the child and other members of his family, he was maintaining a home, and the mother for more than three years had failed to exercise any control over them.

In *Pacific G. D. Co.* v. *Industrial Acc. Com.,* 184 Cal. 462 [13 A. L. R. 725, 194 Pac. 1], it is held that a father, who has been deprived of the custody of his minor child by a decree of divorce, has a right to voluntarily resume responsibility for its support upon the abandonment of the child by its mother to whom the custody had been awarded. While in the case at bar the mother voluntarily returned the custody of the child to the father, permitted him to take him into the state of California, and thereafter she paid no attention to the child whatever. The same principle of custody seems to be involved in the case last cited and the case at bar. It is clear that under the facts of this case the family status between the father and son, as constituted by natural relationship, was not broken by the divorce, and that after the return of the son by the mother to the father, as hereinbefore set forth, the father's right of action for the death of his son was complete. (*Clark* v. *Northern Pac. Ry. Co., supra; American R. Co. of Porto Rico* v. *Santiago, supra.*)

Counsel for appellant cites many authorities to the effect that the judgment of a foreign state is entitled to full faith and credit in this state. A case in point is *In re Wenman,* 33 Cal. App. 592 [165 Pac. 1024]. In that case it was held

that the doctrine of comity between the states of the Union required the recognition of a judgment of a sister state awarding the custody of a minor child to one of the parties, in the absence of any showing that since the entry of the decree the petitioner had become an unfit or unsafe person to have the care and control of the minor.

There can be no doubt that such is the rule, but even though the judgment in the Colorado case was one of a court of competent jurisdiction, it would make no difference in this case under the changed circumstances here presented.

Appellant further claims that the decisions of other states in the construction of section 376 of the Code of Civil Procedure is not binding upon the courts of this state. In support thereof he cites *Estate of Riccomi,* 185 Cal. 458 [14 A. L. R. 509, 179 Pac. 97, 99], where, in speaking of a statute of the state of New York, the court says: ''Manifestly, this decision cannot assist in the construction of our statute. And we may well say with relation to decisions from other states relied on by counsel for appellant, as was said in *Early* v. *Pac. etc. Ry. Co.,* 176 Cal. 79, 80 [L. R. A. 1918A, 997, 167 Pac. 513]: 'It would not be without interest, but at the same time wholly unnecessary to follow these learned counsel in their analyses of the varying statutes and the decisions of the courts upon them. For when the last word shall have been said in such a consideration, the paramount fact will still remain that rights under our section 377 of the Code of Civil Procedure are to be defined not by what other courts have said touching their own statutes, but from the meaning and intent of our own law derived from a reading of it.' ''

While it is true that the highest courts of our own state place the final construction upon our law, the foregoing language does not mean that decisions of other states in so far as they are consistent and conform to the statute of our own state, especially where the statutes are the same as our own, and those construed in *American R. Co. of Porto Rico* v. *Santiago,* 9 Fed. (2d) 753, and *Clark* v. *Northern Pac. Ry., supra,* shall not be given effect where they are consistent with the statute under consideration and with reason and logic. We are of the opinion that in the case at bar the father is the proper party plaintiff.

■ Another point advanced as a ground for reversal is predicated upon the failure of the court to determine the joint and several liability of both defendants, or to render a judgment against or in favor of appellant's co-defendant. It is, of course, fundamental that if the failure to find a judgment for or against the appellant's co-defendant is prejudicial to her, then the cause must be remanded for further proceedings. If, however, she is not prejudiced thereby, then she cannot be heard to complain. In *Cole* v. *Roebling Con. Co.*, 156 Cal. 443, 446 [105 Pac. 255, 257], it is said:

"Section 579 of the Code of Civil Procedure provides: 'In an action against several defendants, the court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others, whenever a several judgment is proper.' . . . "

"It is not disputed that two or more persons who jointly engage in the commission of a tort are jointly and severally liable, as the injured party may elect. The injured party may sue all or any of them jointly, or each separately, or having secured a joint judgment against all, enforce such judgment by execution against one only, the only limitation being that he can have but one satisfaction for the injury that he has received. (*Fowden* v. *Pacific Coast etc. Co.*, 149 Cal. 157 [86 Pac. 178].) (See, also, *Tompkins* v. *Clay St. Ry. Co.*, 66 Cal. 166 [4 Pac. 1165].) In this case plaintiff might have brought separate actions against Wilson and the other defendant, his complaint containing the precise allegations as to a joint act of negligence that are made in the complaint here. If he had done so, such complaint in each action, although alleging a joint act of negligence on the part of the defendant and the other party named, would have stated a complete and separate individual liability against the party sued on account of the single act complained of. (*Fowden* v. *Pacific Coast etc. Co.*, 149 Cal. 157 [86 Pac. 178].) Nor can it be disputed that, under the rules of law in force in this state in an action of the character of the one before us, judgment may be given against one defendant and in favor of another defendant. (Code Civ. Proc., sec. 578; *Fowden* v. *Pacific Coast etc. Co.*, *supra.*) In view of these well-settled rules, by virtue of which a separate action could have been maintained against Wilson upon the very allega-

tions contained in this complaint, it is difficult to conceive why a 'several judgment' against one or two or more defendants charged with having jointly participated in a single act of negligence producing injury is not 'proper', and if it would be 'proper', it is in terms authorized by section 579 of the Code of Civil Procedure.''

In *Fearson* v. *Fodera*, 169 Cal. 370 [Ann. Cas. 1916D, 312, 148 Pac. 200, 202], it is said: ''It is now the statutory rule in this state that if a judgment be given against several defendants who have been sued as joint tortfeasors, the judgment, if found to be erroneous as to any one of the defendants, may be vacated as to that one only, and be continued in full force and effect as to the remaining defendants who have not appealed. (Code Civ. Proc., secs. 578 and 579; *Nichols* v. *Dunphy*, 58 Cal. 605; *Cole* v. *Roebling Con. Co.*, 156 Cal. 443 [105 Pac. 255]; *Fowden* v. *Pacific Coast S. S. Co.*, 149 Cal. 151 [86 Pac. 178]; *Zibbel* v. *Southern Pac. Co.*, 160 Cal. 237 [116 Pac. 513].)'' (See, also, *Clark* v. *Torchiana*, 19 Cal. App. 786, 792 [127 Pac. 831].)

There is also another rule of law applicable to the point here involved. The court, as heretofore set forth, did not render a judgment for or against C. F. Cable, one of the alleged tort-feasors. He has failed to appeal from the judgment. Therefore, if error was committed, it could be taken advantage of only by said joint tort-feasor. In *McClellan* v. *Weaver*, 4 Cal. App. 593, 597 [88 Pac. 646], it is held that no matter whether a decree of distribution is erroneous or not, it was of no concern to the appellants, who were not affected thereby.

Other cases in point are *Gray* v. *Bonnell*, 19 Cal. App. 243 [125 Pac. 355]; *Dobbs* v. *Purrington*, 136 Cal. 70 [68 Pac. 323]; *Mandary* v. *City of Fresno*, 20 Cal. App. 91 [128 Pac. 340].

We are of the opinion that the appellant has not been injured by the failure of the court to enter judgment against her co-defendant, who is not an appellant in this case. In support of the last point above referred to, the appellant cites the cases of *Schultz* v. *McLain*, 76 Cal. 608 [18 Pac. 775], and *McMahon* v. *Hetch Hetchy Y. V. Ry. Co.*, 2 Cal. App. 400 [84 Pac. 350], but in those cases both of the defendants were appellants, and in *Williamson* v. *Joyce*, 137 Cal. 151 [69 Pac. 980], also cited by appellant, the questions

here involved were not in issue but notwithstanding the court did hold that the judgment in effect disposed of the issues as to all of the defendants. We see no merit in the claim.

It is also contended by the appellant that certain material issues raised by the pleadings and upon which evidence was introduced have not been disposed of by the court. In the absence of specifications as to which of said issues have not been passed upon, we do not think we are called upon to examine the record to find if there are any. If, as conjectured by counsel for respondent, the point relied upon in support of this claim is a failure to find upon the question of contributory negligence, then it is sufficient to say that no such plea has been raised by the answer.

The language used in the answer is as follows: "That if the death of said Renardo Frazzini occurred through any act of this defendant that said death occurred proximately and directly through and by reason of the unlawful act of said plaintiff," is not a plea of contributory negligence. (*Crabbe* v. *Mammoth Co.*, 168 Cal. 505 [143 Pac. 714].) However, finding No. 15, as follows, "That it is not true that the death of Renardo Frazzini occurred proximately and directly through and by reason of the unlawful and wrongful act of said plaintiff in any manner at all," read in connection with finding No. 3, which fixes the negligence of the appellant as the proximate cause of the death of Renardo Frazzini is sufficient to constitute a finding negativing contributory negligence, even considering the pleading sufficient to raise the issue of contributory negligence.

A further contention of appellant is that the trial court erred in failing to determine whether the death of Renardo Frazzini "occurred by reason of the negligence" of appellant or by reason of the "willful and malicious act" of appellant. There are two counts in the complaint as to alleged damages by reason of the negligence of the defendant and the consequential damages by reason of the wilful and malicious conduct of the appellant. In finding No. 3, the court found that the damage suffered by plaintiff was through the negligence of the appellant. In finding No. 17, facts are found which negative the affirmative defense made by the appellant, and finding No. 14 is to the effect that the death of Renardo Frazzini did not occur through and by reason of unavoidable accident and without any volition,

will, negligence, malice or intent on the part of the defendant Louise Cable is also in direct response to the allegations of said defendant's third separate defense.

In *Bryson* v. *Bryson*, 90 Cal. 323 [27 Pac. 186], it is said: "If the complaint, as in the present instance, sets forth two or more grounds for relief, either of which is sufficient to support a judgment in favor of the plaintiff, a finding upon one of such issues is sufficient, and a failure to find upon the other does not constitute a mistrial or render the decision 'against law'." This language is cited with approval in *Adams* v. *Helbing*, 107 Cal. 298 [40 Pac. 422], and *Morris* v. *Turley*, 94 Cal. App. 691 [271 Pac. 916], and we think is applicable to this case, even though there is no direct finding in this case.

▮ Complaint is made that the trial court failed to make a finding as to the degree of care required of the appellant under the facts in this case; that the findings simply negative in her the exercise of all possible care, prudence and caution for the safety of Renardo and other persons present. There is a finding of negligence on the part of appellant which was the proximate cause of the death of Renardo. We are of the opinion that such finding is sufficient to support the judgment. However, it is said in *Rudd* v. *Byrnes*, 156 Cal. 636, 640 [20 Ann. Cas. 124, 26 L. R. A. (N. S.) 134, 105 Pac. 957, 959]: "As firearms are extraordinarily dangerous, a person who handles such a weapon is bound to use extraordinary care to prevent injury to others, and is held to a strict accountability for a want of such care." After citing a number of authorities in support of the foregoing rule of law, the court further says: "One who causes injury to another by discharging a firearm must, in order to excuse himself from liability, show that he was absolutely without fault." We think the case last cited disposes of appellant's claim that ordinary care was all that was required. However, reading the evidence as a whole, we are convinced that the appellant did not exercise ordinary care.

▮ It is also claimed that the court failed to determine the legal effect of plaintiff's armed trespass upon the premises of defendant and the events flowing therefrom. At this point in her argument, appellant sets forth certain testimony in support of her theory that this trespass brought on a conflict between the plaintiff and his son Albino on

the one side and the appellant's co-defendant on the other, which conflict was the fault of the plaintiff. However, evidence of the plaintiff and his son Albino upon this subject contradicts that of appellant and others and is entirely ignored in defendant's argument. It was the duty of the trial court to resolve this conflict, and as it accepted the version of the occurrence given by the plaintiff and his son, it must be accepted by this court.

It is also advanced as a reason for reversal that the plaintiff being a trespasser upon the premises, the appellant as the owner of the land is not civilly liable for the killing of the occupant while resisting the owner's attempt to regain possession without the use of more force than was reasonably necessary in dealing with such trespasser. (*Burnham* v. *Stone*, 101 Cal. 164 [35 Pac. 627].)

According to the testimony of the plaintiff, when he was ordered by Cable to leave the premises, he said he would go as soon as his son Albino, who had been hunting, came to him. C. F. Cable testified that it did not seem unreasonable to him that plaintiff should want to wait for his son. It also appears that when Albino returned, he and the respondent left the premises, and the killing of Renardo, who was seated in the automobile, took place upon the public highway.

The court also found against the testimony of appellant that she saw her husband and Albino and his father engaged in combat, and that the latter two were beating her husband with weapons, or that appellant stumbled. This evidence was denied by the Frazzinis and merely raised a conflict in the evidence. It also appears from the record that Albino, who was hunting, had a license to carry a gun for that purpose. The testimony further shows that the plaintiff did not fire any shots that morning. The mere fact that the plaintiff was a trespasser or that he may have violated certain ordinances of the city of Los Angeles, standing alone, had no causal connection that would amount to negligence on his part. Renardo, the fourteen year old boy, who was killed while seated in the car, had an air rifle, and, according to the testimony of his father and brother, had not been out of the car.

It further appears that during the course of the morning Renardo may have fired a few shots from the air-

gun in violation of a city ordinance, but both appellant and her husband testified that they never saw Renardo at any time. The latter was seated in the back seat of the automobile and when the shot was fired which killed him, his father and brother were on the front seat. There is no denial by the father that after his boy had been killed, he and the other son struggled with the defendant C. F. Cable. We are of the opinion that the firing of the shots by Renardo in violation of Ordinance No. 6508 of the city of Los Angeles could not affect the circumstances surrounding this unfortunate affair or be an act of contributory negligence on his part or that of his father.

It is also contended that the trial court erred in refusing appellant's request to question the plaintiff concerning aid given by city of Los Angeles Charities to Renardo. It is said in support of appellant's right to ask such question that it had a direct bearing on the amount of financial loss, if any, suffered by plaintiff from the death of his son. We do not believe that an answer to this question would have assisted the court in determining the question of the financial loss to plaintiff. The evidence shows that at the time of Renardo's death he was soliciting business for his father's shoe repairing establishment and brought to his father about $15 per week from that source, that he worked in a drug-store after school was closed and brought the money he earned home to his father. That the father may at some time have received help from some charitable organization toward the support of Renardo would not in our opinion have any material bearing on the case.

It is also claimed that the judgment is excessive. The court awarded damages in the sum of $10,000. In addition to what has been said as to the earning capacity of the boy, the record discloses that Renardo was fourteen years of age, that he was in sound physical and mental health, that his life expectancy was twenty-three years, that he was about to enter the junior college. In addition to this, the father was entitled to recover for the loss of the comfort, protection and society of the boy. We do not see what other showing could have been made by respondent. We think the case of *O'Meara* v. *Haiden,* 204 Cal. 354 [60 A. L. R. 1381, 268 Pac. 334], is an answer to

this question that any further showing was necessary. Upon the authority of that case, we also hold that the judgment is not excessive.

Appellant also contends that the evidence is insufficient to support the findings of negligence. He sets out a part of the testimony of Damiano and Albino Frazzini. It appears from the testimony of Albino Frazzini that he saw the appellant point the pistol toward the automobile, that he saw her aim. Damiano Frazzini testified that the pistol was aimed in the direction of the automobile. It is claimed that this evidence does not disclose negligence but a wilful act on the part of appellant, for when one "wills to do an act he ceases to be negligent", appellant citing in support of that doctrine the case of *Tognazzini* v. *Freeman,* 18 Cal. App. 468 [123 Pac. 540].

We see nothing contradictory in the court's finding of negligence on the part of appellant with the foregoing testimony of the Frazzinis; they did not testify that the gun was aimed at Renardo or anyone else, and the court had a right to draw the conclusion that the pistol was pointed in the general direction of the car, but not necessarily at anyone, or with the intent to shoot anyone. Indeed, the appellant testified that she did not see Renardo either before or after the shooting. She also testified that she did not intend to shoot anyone, nor did she aim the pistol at anyone, but that the occurrence was accidental. We think from the foregoing evidence that the inference that the gun was discharged negligently is far more logical and probable than that she wilfully shot the boy.

Counsel for appellant argues that certain findings are not supported by the evidence and he discusses the weight of the evidence of the several witnesses, but under well-settled principles of law, the weight of the evidence and the inferences to be drawn rest with the trial court, and may not be disturbed by a court of appeal.

It is also contended that because the complaint alleges that the mother of Renardo is dead and the fact is undisputed that she is alive, that allegation of the complaint must fall. This is self-evident, but in the face of the fact that the father is the proper party plaintiff, the allegation is immaterial.

There are many other specifications of error argued in appellant's opening brief. We have examined each of them with care and find that they are covered by what has already been said. To pass upon each one of them separately would unduly prolong this opinion and serve no useful purpose.

We find no error in the record to justify a reversal of the case. It is therefore ordered that the judgment be and it is hereby affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 27, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 27, 1931.