[Sac. No. 6531.   In Bank.   Apr. 19, 1955.]

ROY C. JENSEN et al., Appellants, v. FLOYD MINARD, Respondent.

Vernon F. Gant for Appellants.

David F. Bush and Bush, Ackley & Milich for Respondent.

TRAYNOR, J.—Judgment was entered on a verdict for defendant in an action for wrongful death. Plaintiffs appeal from the judgment and the order denying their motion for a new trial. Since the latter order is not appealable, the appeal therefrom is dismissed.

On May 21, 1951, Bonnie, 12, and her sister, Carolyn, 8, got off the school bus at the intersection of Wren and Sierra roads in Stanislaus County at about 4:10 p. m. and started

homeward along Wren Road. Defendant's home is located near and just to the west of the intersection of Wren and Sierra roads, which bound his farm land on the east and north. He testified that he was acquainted with the Jensen children and had frequently seen them get off the bus at Wren and Sierra roads. He saw them get off on the day in question while he was sitting with a friend on the patio of his home and watched them proceed along Wren Road until they were lost from view. At about this time he stood up and fired a .22 caliber rifle at a sparrow in his strawberry patch approximately 60 or 65 feet away. He looked up and down Wren Road and into the field beyond before firing and the children were not in sight. Shortly after firing the rifle, he heard a child scream, and he ran toward Wren Road and found Bonnie lying on the road approximately 180 feet south of his line of fire and approximately 200 yards from the point of firing. She had been struck in the head by a bullet from his gun and died later that day. To support their theory that defendant must have fired in the direction of the children, plaintiffs introduced expert testimony indicating that the bullet had not ricocheted. Defendant introduced expert testimony indicating that it had. To prove that he was not negligent in failing to foresee the possibility of harm from a richochet, he presented expert testimony that the chance of the accident's happening as a result of a ricochet was only one in ten million.

Plaintiffs contend that the trial court erred in failing to instruct the jury that "One who causes injury to another by discharging a firearm must, in order to excuse himself from liability, show that he was absolutely without fault." This instruction, taken from the opinion of the court in *Rudd* v. *Byrnes,* 156 Cal. 636, 640 [105 P. 957, 20 Ann.Cas. 124, 26 L.R.A.N.S. 134], not only requires that the defendant be absolutely without fault but places the burden of proof of this issue on him. ■ In ordinary negligence cases, however, the standard of care is ordinary care under the circumstances and the burden of proof is on the plaintiff. The question is presented, therefore, whether the court in the Rudd case meant to establish a special rule to govern injuries caused by firearms. When the language is read in context, it is clear that the court did not establish such a rule, but was merely emphasizing the proposition that owing to the dangerous character of the instrumentality ordinary care in the use of firearms requires a very high degree of caution. ■ "In

short, the rules of law governing actions for injuries caused by the discharge of firearms are not different from the rules governing actions for any injuries claimed to have been inflicted by the negligence of the defendant. By reason of the dangerous nature of such weapons, a person handing them is held to a high degree of care. If he had not used the degree of care appropriate to the circumstances, and injury results, he will be liable to the person injured. . . .'' (*Rudd* v. *Byrnes,* 156 Cal. 636, 641 [105 P. 957, 20 Ann.Cas. 124, 26 L.R.A.N.S. 134] ; see also *Cucinella* v. *Weston Biscuit Co.,* 42 Cal.2d 71, 75 [265 P.2d 513] ; *Lasater* v. *Oakland Scavenger Co.,* 71 Cal.App.2d 217, 221 [162 P.2d 486].)

■ In the present case the jury was properly instructed on this theory. Negligence was defined as the failure to use ordinary care. The court then pointed out that ''inasmuch as the amount of caution used by the ordinary prudent person varies in direct proportion to the danger known to be involved in his undertaking, it follows that in the exercise of ordinary care, the amount of caution required will vary in accordance with the nature of the act and the surrounding circumstances. To put the matter another way, the amount of caution required by the law increases, as does the danger that reasonably should be apprehended. . . . What ordinary care is in any particular case depends upon what the circumstances are. Here the defendant was firing a gun which is an extremely dangerous activity. Ordinary care while firing a gun demands that the person firing the gun must exercise extreme caution while so doing. If you find that the defendant did not use extreme caution, then you must find that he was negligent.''

This case is not one in which the purpose of the shooting was unlawful (see *Corn* v. *Sheppard,* 179 Minn. 490 [229 N.W. 869, 871]), or in which a statute or ordinance prohibits the use of any firearms. It is therefore unnecessary to decide whether defendant might be liable despite the exercise of extreme caution if the shooting were otherwise wrongful.

■ Under the circumstances of this case there is no material difference between defining ordinary care in the use of firearms in terms of extreme caution or in terms of being absolutely without fault. Thus, to the extent that the requested instruction related to the standard of care, it was adequately covered by the instructions that were given, and to the extent that it purported to place the burden of proof on defendant,

it was erroneous. Accordingly, the trial court did not err in refusing to give it.

The trial court committed prejudicial error, however, in giving certain instructions requested by defendant. The jury were instructed that ''The mere fact that an accident happened, considered alone, does not support an inference that some party, or any party, to this action was negligent.'' Since it was conceded that the fatal bullet was fired by defendant, this instruction in effect told the jury that the fact that Bonnie was killed by a bullet from defendant's gun afforded no evidence of negligence. Ordinarily, however, accidents of this sort do not occur if those using firearms use due care. Even though instructions on the doctrine of res ipsa loquitur were not requested, the jury should not have been foreclosed from considering the evidence provided by the happening of the accident itself in determining whether defendant was negligent. (See *Rose* v. *Melody Lane*, 39 Cal. 2d 481, 488 [247 P.2d 335].) Moreover, this error was aggravated by the instruction given on unavoidable accidents, which stated: ''In law we recognize what is termed an unavoidable or inevitable accident. These terms do not mean literally that it was not possible for such an accident to be avoided. They simply denote an accident that occurred without having been proximately caused by negligence. Even if such an accident could have been avoided by the exercise of exceptional foresight, skill or caution, still, no one may be held liable for injuries resulting from it.'' Considering these instructions together, the jury could easily be led to believe that prima facie the accident was unavoidable and was not owing to defendant's negligence. It must also be noted that the instruction defined unavoidable accidents as including those that could have been avoided by the ''exercise of exceptional foresight, skill or caution'' thus creating a clear conflict with the correct instruction that ordinary care requires that one using firearms must use extreme caution.

Although defendant's own expert testified that ricochets from the ground at the angle at which defendant was shooting were not unlikely, he also testified that it was highly improbable that they would deviate sufficiently from the line of fire to endanger Bonnie and that the chance of the accident's having been caused by a ricochet bullet was only one in ten million. Under these circumstances we cannot agree with plaintiffs' contention that as a matter of law the evidence does not support the verdict. The possibility of a ricochet,

however, coupled with the fact that the children had just passed beyond defendant's field of view would clearly justify a finding that defendant did not use extreme caution. Accordingly, we have concluded that the giving of the erroneous instructions resulted in a miscarriage of justice.

The judgment is reversed.

Gibson, C. J., Edmonds, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I concur in the judgment of reversal but I do not agree with the reasoning of the majority upon which its conclusion is based.

It is my considered opinion that the standard of care required of one who discharges firearms is so high that a person can only be excused from liability for injuries caused to others by a showing that he was absolutely without fault, and it was prejudicial error for the trial judge to refuse to instruct the jury accordingly.

In discussing the standard of care required in firearm cases under common law it is stated in Pollock's Law of Torts, 15th edition (1951), page 386, that "The risk incident to dealing with fire, fire-arms, explosive or highly inflammable matters, corrosive or otherwise dangerous or noxious fluids, and (it is apprehended) poisons, is accounted by the common law among those which subject the actor to strict responsibility. Sometimes the term 'consummate care' is used to describe the amount of caution required, but it is doubtful whether even this be strong enough. At least, we do not know of any English case of this kind (not falling under some recognized head of exception) where unsuccessful diligence on the defendant's part was held to exonerate him." This standard which would appear to border upon the doctrine of strict liability has been interpreted by our American courts in different ways. As summed up in American Jurisprudence (vol. 56, p. 1006), "The degree of care to be exercised in the use or handling of a firearm is determined by the application of general rules relating to the care which must be exercised by one using dangerous agencies or instrumentalities. It is often said that a very high degree of care is required from all persons using firearms in the immediate vicinity of others regardless of how lawful or innocent such use may be, or that more than ordinary care to prevent injury to others is required. Some courts refer to the degree of care required

as a high degree of care; others say that the utmost or highest degree of care must be used to the end that harm may not come to others. More often, the requisite degree of care is defined as such care as is commensurate with the dangerous nature of the firearm. The same degree of care is, no doubt, expressed by saying that the care which persons using firearms are bound to take in order to avoid injury to others is a care proportionate to the probability of injury to others, or by saying that one who has in his possession or under his control an instrumentality exceptionally dangerous in character is bound to take exceptional precautions to prevent an injury thereby.'' On pages 1004-1005 of this same volume it is stated that ''Some courts have been inclined to hold a person to very strict rules of accountability for injuries resulting from the discharge of a firearm. It has been held that one is liable civilly for damages for injuries inflicted by an unintentional discharge of a firearm unless he shows that the injury was unavoidable. In several cases it is said that the test of liability is not whether the injury was accidentally inflicted, but whether the defendant was free from all blame. According to the theory of these cases, it is no defense that the act occurred by misadventure, and without the wrongdoer's intending it. The defendant must show such circumstances as would make it appear to the court that the injury done to the plaintiff was inevitable, and the defendant was not chargeable with any negligence. This view warrants the imposition of liability on a person who, voluntarily aiming his gun at a particular person or animal, accidentally shoots another person or animal. Perhaps in these cases the court intended merely to emphasize the care required in the use of such a dangerous instrumentality as a firearm; clearly, the modern tendency of the court is to apply the general rule of negligence where injury or death has been inflicted by missiles from a firearm, and to permit the defendant in an action for damages to show in defense his freedom from negligence in causing the injury complained of. But even with respect to such an action it may be said that one who is in possession of a loaded gun is bound to use care proportionate to the dangerous nature of the instrument.''

While the courts of this country have approached the problem in different ways they have generally required a great deal of care from one using firearms. A reading of the cases in other jurisdictions illustrates the extremely high standard

of care which has been imposed. In *Corn* v. *Sheppard,* 179 Minn. 490 [229 N.W. 869, 871], the court stated that ''Even where a gun is accidentally discharged the one handling it is liable for the injury caused unless he showed that he was entirely free from blame.'' In *Judd* v. *Ballard,* 66 Vt. 668 [30 A. 96; 97], the court said ''The test of liability is not whether the injury was accidentally inflicted, but whether the defendant was free from blame.'' In the case of *Atchison* v. *Procise,* (Mo.App.) 24 S.W.2d 187, 190, the court stated that ''In such situations all the plaintiff was required to show was that defendant fired the shot and that plaintiff was hurt. The burden of justification then, shifted to defendant and he was required to show that injury was inevitable and utterly without fault on his part.'' For other cases expressing similar views see *Harrison* v. *Allen,* 179 Ill.App. 520; *White* v. *Bunn,* 346 Mo. 1112 [145 S.W.2d 138]; *Annear* v. *Swartz,* 46 Okla. 98 [148 P. 706]; *Hawksley* v. *Peace,* 38 R.I. 544 [96 A. 856]; *Manning* v. *Jones,* 95 Ark. 359 [129 S.W. 791]; *Morgan* v. *Cox,* 22 Mo. 373 [66 Am.Dec. 623].

In California the extremely high standard to which the user of firearms must be held was recognized in the case of *Rudd* v. *Byrnes,* 156 Cal. 636, 640 [105 P. 957, 20 Ann.Cas. 124, 26 L.R.A.N.S. 134], where this court stated that '' 'As firearms are extraordinarily dangerous, a person who handles such a weapon is bound to use extraordinary care to prevent injury to others, and is held to strict accountability for a want of such care.' (12 Am. & Eng. Ency. of Law, 2d ed. p. 518; *Bahel* v. *Manning,* 112 Mich. 24 [70 N.W. 327, 67 Am. St.Rep. 381]; *Judd* v. *Ballard,* 66 Vt. 688 [30 A. 96]; *Moebus* v. *Becker,* 46 N.J.L. 41; *Morgan* v. *Cox,* 22 Mo. 373 [66 Am. Dec. 623].) *One who causes injury to another by discharging a firearm must, in order to excuse himself from liability, show that he was absolutely without fault.* (12 Am. & Eng. Ency. of Law, 2d ed., p. 519; *Bahel* v. *Manning,* 112 Mich. 24 [70 N.W. 327, 67 Am.St.Rep. 381]; *Morgan* v. *Cox,* 22 Mo. 373 [66 Am.Dec. 623]; *Rally* v. *Ayers,* 3 Sneed 677; *Wright* v. *Clark,* 50 Vt. 130 [28 Am.Rep. 496].)'' (Emphasis added.)

In the case of *Frazzini* v. *Cable,* 114 Cal.App. 444, 456 [300 P. 121], the court quoted the rule as stated in *Rudd* v. *Byrnes, supra,* 156 Cal. 636, 640, and concluded that the Rudd case disposed ''of appellant's claim that ordinary care was all that was required.''

It thus becomes apparent that almost all jurisdictions im-

pose a very high standard of care upon the users of firearms and that in California this high standard has been interpreted as meaning that a person who injures another in discharging a firearm can only escape liability by showing "that he was absolutely without fault."

As stated in the majority opinion, the evidence discloses that the defendant was sitting on the patio of his home firing at birds with a .22 caliber rifle; that his home was near the junction of two public roads; that the area was a populated farm area; that defendant knew that children were in the area of Wren Road; that Wren Road was less than 180 yards beyond the strawberry patch into which defendant was firing; and that the body of Bonnie Ann Jensen was found on Wren Road approximately 200 yards from the point of firing. The only evidence offered by defendant as an excuse for the shooting consisted of his testimony that he had used care in the handling of the gun; that he had looked up and down Wren Road before shooting and found it to be clear; that he had aimed into the strawberry patch; and that even if extended beyond the strawberry patch his line of fire would have been somewhat to the north of where the body of the victim was found. There was conflicting expert testimony as to whether or not the bullet might have ricocheted. Looking at the evidence as a whole it is difficult to say that there was any evidence upon which a jury could find that the defendant was entirely free from blame or that he was "absolutely without fault." Neither the fact that defendant looked both ways before shooting nor the fact that he was not aiming at the children is sufficient to exonerate him from liability in a case of this type particularly since he had seen the children get off the bus and knew they were in the area. Likewise the mere fact that a bullet may have ricocheted cannot of itself exonerate one injuring another with a firearm since it is a well known fact that bullets frequently glance off objects and travel in other than the exact direction of fire. Defendant admitted that he fired in the direction of the road on which he had previously seen the children walking. It is true that the evidence shows that the defendant did exercise some care and that he did not intend to harm the victim but it is extremely doubtful that such evidence can support a finding that the defendant was "absolutely without fault." A verdict for the defendant based upon evidence of this character indicates that the jury was not sufficiently apprised as

to the standard of care required of the defendant in order to relieve him from liability. Had such an instruction been given a different verdict might have been returned. Hence, it is my opinion that the trial court committed prejudicial error in refusing to give the jury the instruction offered by plaintiffs to the effect that ''One who causes injury to another by discharging a firearm must, in order to excuse himself from liability show that he was absolutely without fault.'' The language of this instruction was taken verbatim from the opinion of this court in *Rudd* v. *Byrnes, supra,* 165 Cal. 636. Such is and should be the law of California, and an instruction of this type was necessary to fully apprise the jury of the extremely high standard of care required of the users of firearms. The mere fact that *other instructions were given,* indicating that defendant was required to use extreme caution and extraordinary care, is not sufficient. As pointed out in the foregoing discussion the standard of care for users of firearms has been stated in different language by various courts in other jurisdictions. Some require great care, some extraordinary care and in still others the standard is so high that a person injuring another by firing a gun can only escape liability by showing that he was entirely free of blame. California has adopted the latter view as expressed in *Rudd* v. *Byrnes, supra,* 156 Cal. 636, and an instruction expressly setting out such a standard should have been given, and was necessary, to fully apprise the jury of the standard of care required of the defendant in this case.

Respondent's petition for a rehearing was denied May 18, 1955.