[No. B012711. Second Dist., Div. Seven. June 18, 1986.]

ROBERT WILKINSON, Plaintiff and Appellant, v.
BAY SHORE LUMBER COMPANY, Defendant and Respondent.

596

COUNSEL

Joseph Daniel Davis and Charlotte E. Costan for Plaintiff and Appellant.

Nichols, Stead, Boileau & Lamb, Michael D. Smith and M. Daniel Saylor for Defendant and Respondent.

OPINION

THOMPSON, J.—Plaintiff appeals from a verdict in favor of defendant Bay Shore Lumber, the supplier of a defective board of lumber. Plaintiff, a carpenter, was building an outrigger on the roof of a house when he accidentally stepped on the defective board which broke due to internal dry rot wholly concealed from view. Plaintiff, who fell about 10 to 12 feet to the concrete below, severely injured his left knee. Plaintiff sued defendant, among others,[1] under theories of negligence and strict liability for supplying the defective wood. Plaintiff later abandoned his negligence claim against defendant. The jury returned a special verdict for defendant, finding that the wood was defective when it left defendant's possession, but that the defect was an unavoidably unsafe aspect of the wood, for which defendant is not strictly liable. (Rest.2d Torts, § 402A, com. k, at pp. 353-354.)

Plaintiff claims on appeal that the instruction on the unavoidably unsafe product defense (com. k defense) was improperly given, resulting in a miscarriage of justice, because (1) as a matter of law the comment k defense is inapplicable to lumber, and (2) even assuming that the comment k defense applies to lumber, there was insufficient evidence to warrant the giving of that instruction. We agree with his second contention, and shall reverse.

FACTUAL AND PROCEDURAL BACKGROUND

The accident which gave rise to this action occurred while plaintiff, working as a carpenter, balanced himself to trim an outrigger (a two-by-four piece of wood extending out over the eaves of a house with a gabled roof) which broke under plaintiff's weight. Plaintiff fell approximately 10 to 12 feet to the concrete below, seriously injuring his left knee.[2] The

---

[1] Plaintiff has abandoned his appeal from the verdicts in favor of Tom Sims and Hillcrest Ranchero Company, the general contractor.

[2] The knee required three surgeries. Plaintiff lost 80 percent of the cartilage in the knee, and will have to undergo surgery to replace his knee with an artificial joint in five to six years.

uncontroverted testimony of plaintiff and another carpenter, Pruitt, both of whom observed the board after the accident, established that the dry rot was not visible on its surface. There was testimony that a 2 by 4 used as an outrigger of good normal quality should be able to support the weight of a 175-pound man.

The wood supplied by defendant to the construction site where plaintiff was injured consisted of "construction/standard grade" wood. By definition, "construction/standard grade" wood is free of dry rot. However, plaintiff testified that he discarded 20 percent of the lumber supplied by defendant because it contained visible dry rot.

Ferguson, the owner of Bay Shore Lumber, testified that, in his some 43 years of experience in the lumber industry, he had never seen a piece of wood that looked normal on the outside but was rotten on the inside. He further testified that dry rot is caused by heat and moisture after the tree is cut, and develops from the outside to the inside of the wood. Barker, the vice president of plaintiff's employer, Klein Construction, testified that dry rot is a "burned look on lumber" that starts on the outside and works in, so that it is visible on the outside of the wood first.

The trial court, at defendant's request, instructed the jury that "[t]he supplier of an unavoidably unsafe product is not strictly liable for injury resulting from the unavoidably unsafe aspect of the product." The court also instructed that defendant had the burden of establishing, by a preponderance of all the evidence, all of the facts necessary to prove that the defect, if any, was an unavoidably unsafe aspect of the lumber. No instruction was requested nor given to define the term "unavoidably unsafe."

No evidence was introduced to show whether dry rot can be prevented by the proper cutting, curing, and storing of wood.[3] In his closing argument, defendant's counsel urged the jury to apply their "life experiences" to determine that dry rot is an unavoidably unsafe aspect of lumber: "[D]oes it make any sense to hold somebody strictly liable to pay for Mr. Wilkinson's remaining lifetime expenses, simply because there was a defect in the product which is natural to the product and about which the company could do absolutely nothing? [¶] I suggest to you that lumber is a socially desirable product; that we can't do without it; but there are some risks inherent in many things that we do. . . . [¶] And I think common knowledge dictates that you conclude that this was an unavoidably unsafe aspect of this product, and that my client is not liable. . . . [¶] You have to listen to what the

---

[3]We decline to take judicial notice of the factual data on this issue presented in appellant's opening brief. We do not agree that the principles established in the "Brandeis Brief" and accepted by the Supreme Court in *Muller* v. *Oregon* (1908) 208 U.S. 412 [52 L.Ed. 551, 28 S.Ct. 324], are applicable here.

witnesses say. But you are not obligated to ignore and exclude your life experiences. . . . [¶] You are entitled to [apply your life experiences] as far as the unsafe aspect of this product is concerned . . . ."

The jury returned a special verdict for defendant, finding (1) the lumber was sold by defendant, (2) there was a defect in the lumber when it left defendant's possession, and (3) the defect was an unavoidably unsafe aspect of the lumber. Because of the order of questions on the special verdict form, the jury returned a verdict for defendant without reaching the remaining questions concerning, inter alia, proximate cause and comparative fault.

### SCOPE AND STANDARD OF REVIEW

 The failure to object to an instruction relieves an appellate court of the obligation to review claimed error therein. (*Gamboa* v. *Atchison, Topeka & Santa Fe Ry. Co.* (1971) 20 Cal.App.3d 61, 67 [97 Cal.Rptr. 471].) Plaintiff contends that "literally minutes before final argument" defendant raised for the first time the affirmative defense that wood is an unavoidably unsafe product, and that the trial court gave this instruction over plaintiff's objections. Despite the absence of an objection on the record, defendant does not contradict plaintiff's version of these facts. We shall therefore review the claimed error in giving the comment k instruction. However, because the record contains no showing that plaintiff requested that the jury be instructed on the definition of the term "unavoidably unsafe," we refuse to consider plaintiff's claim that this omission compounded the instructional error. (See *Heggblade-Marguleas-Tenneco, Inc.* v. *Sunshine Biscuit, Inc.* (1976) 59 Cal.App.3d 948, 958 [131 Cal.Rptr. 183].)

 A party is entitled to have a requested instruction that is supported by the evidence and applicable law submitted to the jury. (*Hasson* v. *Ford Motor Co.* (1977) 19 Cal.3d 530, 543 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158].) In order for an instruction to be unwarranted by the evidence, the court must find that, as a matter of law, there is not even slight or inconclusive evidence to support the requested instruction. (*Washington* v. *City & County of S.F.* (1954) 123 Cal.App.2d 235, 238 [266 P.2d 828].)

 A judgment may not be set aside on the ground the jury was misdirected unless a reviewing court, after an examination of the entire cause, including the evidence, shall be of the opinion that the error resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13; *Kostecky* v. *Henry* (1980) 113 Cal.App.3d 362, 373 [170 Cal.Rptr. 197].) Prejudice from an erroneous instruction is never presumed; it must be affirmatively demonstrated by the appellant. (*Id.,* at p. 374.) "Consistent with the fundamental rule of ap-

pellate procedure that the appellant must make an affirmative showing of error by an adequate record [citations], it is incumbent upon the appellant to demonstrate that the error was prejudicial under the particular facts in evidence by bringing before the reviewing court a sufficient record showing that absent the error, there was a reasonable probability of a finding in appellant's favor [citations]." (*Ibid.*) If the record fails to affirmatively show that the error was likely to mislead the jury, there is no reversible error. (7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 295, p. 296.)

■ Though there is no precise formula for measuring the effect of an erroneous instruction, the following factors should be considered: "(1) [T]he degree of conflict in the evidence on critical issues [citations]; (2) whether respondent's argument to the jury may have contributed to the instruction's misleading effect [citation]; (3) whether the jury requested a rereading of the erroneous instruction [citation] or of related evidence [citation]; (4) the closeness of the jury's verdict [citation]; and (5) the effect of other instructions in remedying the error [citations]." (*LeMons* v. *Regents of University of California* (1978) 21 Cal.3d 869, 876 [148 Cal.Rptr. 355, 582 P.2d 946].)

### DISCUSSION

The first amended complaint alleges that defendant, knowing that it was to be used without inspection for defects, supplied wood that was "unsafe for its intended use by reason of defects in its design and manufacture in that it collapsed" while being used in a manner for which it was foreseeably intended to be used, proximately causing plaintiff's injuries. ■ "A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." (*Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049].) ■ Our Supreme Court "held in *Cronin* [*Cronin* v. *J.B.E. Olson Corp.* (1972) 8 Cal.3d 121 (104 Cal.Rptr. 433, 501 P.2d 1153)] that a plaintiff satisfies his burden of proof under *Greenman,* in both a 'manufacturing defect' and 'design defect' context, when he proves the existence of a 'defect' and that such defect was a proximate cause of his injuries." (*Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 427 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1].) ■ The *Greenman* rule is also applicable to retailers, wholesalers, and distributors who sell an article. (*Vandermark* v. *Ford Motor Co.* (1964) 61 Cal.2d 256, 263 [37 Cal.Rptr. 896, 391 P.2d 168]; *Barth* v. *B.F. Goodrich Tire Co.* (1968) 265 Cal.App.2d 228, 252-253 [71 Cal.Rptr. 306].)

The Restatement Second of Torts states at section 402A, comment k, pages 353-354: "*Unavoidably unsafe products*. There are some products

which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. There are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk."

As noted by plaintiff, the few reported decisions in this jurisdiction which refer to comment k overwhelmingly involve products such as prescription drugs, vaccines, blood, and medical devices such as intrauterine devices and breast implants. (*Finn* v. *G.D. Searle & Co.* (1984) 35 Cal.3d 691, 703 [200 Cal.Rptr. 870, 677 P.2d 1147] (drug manufacturer who failed to warn of known danger strictly liable); *Hilliard* v. *A.H. Robins Co.* (1983) 148 Cal.App.3d 374, 403 [196 Cal.Rptr. 117] (proper warning negates strict liability for unavoidably unsafe intrauterine device); *Midgley* v. *S.S. Kresge Co.* (1976) 55 Cal.App.3d 67, 72 [127 Cal.Rptr. 217] (com. k merely mentioned by analogy to duty-to-warn cases); *Carmichael* v. *Reitz* (1971) 17 Cal.App.3d 958, 988 [95 Cal.Rptr. 381] (drug manufacturer who properly prepared the drug and issued proper directions and warnings is not strictly liable for unforeseen results); *Grinnell* v. *Charles Pfizer & Co.* (1969) 274 Cal.App.2d 424, 435, fn. 7 [79 Cal.Rptr. 369] (com. k not pertinent to appeal since case was not tried on theory of strict liability); *Toole* v. *Richardson-Merrell Inc.* (1967) 251 Cal.App.2d 689, 708-709 [60 Cal.Rptr. 398, 29 A.L.R.3d 988] (manufacturer of drug held strictly liable for failing to disclose known toxic effects of Triparanol and failing to warn of its inherent dangers).) The sole case cited by plaintiff involving a comment k instruction, outside the context of prescription drugs, vaccines, medical

devices or blood, is *Netzel* v. *State Sand & Gravel Co.* (1971) 51 Wis.2d 1 [186 N.W.2d 258], wherein the plaintiff suffered severe burns while smoothing concrete that contained excessive lime. The appellate court reversed the defense verdict, noting that the evidence showed that properly prepared or "ordinary" concrete was not unavoidably unsafe.

The cases from other jurisdictions cited by defendant to show an extension of comment k to other areas are not persuasive. Three of these cases merely involve medical devices: *Perfetti* v. *McGhan Medical* (1983) 99 N.M. 645 [662 P.2d 646] (mammary prosthesis); *McKee* v. *Moore* (Okla. 1982) 648 P.2d 21 (intrauterine device); and *Terhune* v. *A.H. Robins Co.* (1978) 90 Wn.2d 9 [577 P.2d 975] (Dalkon Shield). Another of defendant's cases, *Bemis Co. Inc.* v. *Rubush* (Ind.App. 1980) 401 N.E.2d 48, was vacated ((Ind. 1981) 427 N.E.2d 1058, 1059). And *Gross* v. *Nashville Gas Co.* (Tenn.App. 1980) 608 S.W.2d 860, is distinguishable in that it simply followed the long-standing Tennessee precedent that a gas company is not an insurer of safety to those injured from escaping gas, but is liable only for its failure to exercise the high degree of care commensurate with the danger of its product, which is a public necessity with known dangers. (*Id.,* at p. 872.)

Defendant's three remaining cases focus on strict liability for a manufacturer's failure to warn: *Bellotte* v. *Zayre Corporation* (1976) 116 N.H. 52 [352 A.2d 723]; *Russell* v. *G.A.F. Corp.* (D.C. App. 1980) 422 A.2d 989; *Mays* v. *Ciba-Geigy Corp.* (1983) 233 Kan. 38 [661 P.2d 348]. Even if a product is faultlessly made, it may be found defective if it is unreasonably dangerous when placed in the hands of the user without adequate warnings. (*Cavers* v. *Cushman Motor Sales, Inc.* (1979) 95 Cal.App.3d 338, 347 [157 Cal.Rptr. 142].) At best, defendant's cases merely support the recognized principle that while it is no longer necessary to show both a defect and a resulting unreasonable degree arising therefrom to recover for defective manufacture or design (*Barker* v. *Lull Engineering Co., supra,* 20 Cal.3d 413; *Cronin* v. *J.B.E. Olson Co., supra,* 8 Cal.3d 121), the test of liability for failure to warn still contains a standard of reasonableness. This principle is inapplicable to this case, however, because plaintiff's complaint does not charge defendant with liability based on failure to warn.

■ Because we are unaware of a case wherein the comment k defense was applied to lumber, and because the reported decisions overwhelmingly concern products such as prescription drugs, vaccines and medical devices, it is evident that the trial court was breaking new ground in applying the defense here. However, we fail to discern even an iota of evidence in the record to warrant this expansion of the law. The record is devoid of even slight or inconclusive evidence to support a comment k defense instruction. (See *Washington* v. *City & County of S.F., supra,* 123 Cal.App.2d 235,

238.) After combing the record, we are unable to detect any hint of evidence to support defendant's theory, for which defendant bore the burden of proof, that dry rot is an unavoidably unsafe defect in wood.

As a matter of law, we reject the trial court's implicit finding that this question is one which a jury may properly decide, without benefit of any evidence, solely on the basis of "life experience." While the average home-owner may know that properly painted wood is protected against dry rot (see *Di Mare* v. *Cresci* (1962) 58 Cal.2d 292, 297 [23 Cal.Rptr. 772, 373 P.2d 860]), whether and how dry rot can be prevented in a lumber mill and yard is not within the realm of common experience. Therefore, we conclude that the instruction was erroneous.

■ Finally, we consider whether the erroneous instruction was prejudicial. Had the jury not been instructed on the comment k defense, the jury would have continued down the directed verdict form to the remaining issues, including whether the defect in the wood proximately caused plaintiff's injuries, and whether plaintiff was also at fault. While the parties presented conflicting evidence on these two issues, plaintiff was prejudiced by the jury's total failure to consider the issues. We thus conclude that the erroneous instruction was prejudicial.

The judgment is reversed and the case is remanded for retrial.

Lillie, P. J., and Johnson, J., concurred.