[No. B021391. Second Dist., Div. Six. Oct. 22, 1987.]

ROY MILLER, Plaintiff and Appellant, v.
GREGORY KENNEDY et al., Defendants and Respondents.

Brown & Finney and Robert M. Brown for Plaintiff and Appellant.

Steven A. Amerikaner, City Attorney, and David K. Hughes, Assistant City Attorney, for Defendants and Respondents.

## OPINION

**STONE, P. J.**—Roy Miller, plaintiff in the trial court, appeals from a judgment entered on a jury verdict finding defendant/respondent Police

Officer Gregory Kennedy (Kennedy) not negligent in accidentally shooting appellant. Appellant does not contend that the verdict is unsupported by the evidence. His sole argument on appeal is prejudicial error by the trial court in giving one jury instruction and failing to give another one. We affirm.

Viewing the evidence in the light most favorable to the judgment (*Campbell* v. *Southern Pacific Co.* (1978) 22 Cal.3d 51, 60 [148 Cal.Rptr. 596, 583 P.2d 121]), appellant and his friend, Ralph Castellanos, went barhopping during the evening hours of June 2 and early morning hours of June 3, 1983. The last place appellant and Castellanos visited was a bar and disco called Peppers. About 1 a.m., they were asked to leave the bar after appellant harassed some female customers and Castellanos challenged the bartender to a fight for not serving him a drink. While both men were being escorted out of the bar by Peppers's bouncers, profanities were exchanged and Castellanos stated that he would come back with a gun. Appellant and Castellanos then walked across the street from Peppers to a parking lot where Castellanos's truck was parked. Castellanos took a pistol from the truck and appellant picked up an ax handle. The two men walked back in the direction of Peppers with the intent of scaring the bouncers, although the gun was apparently unloaded. Appellant and Castellanos stood across the street from Peppers and engaged in a shouting match with the bouncers, using profanity. At about this time, an employee of Peppers reported the altercation to the police and stated that one of the troublemakers had a gun.

Just as he was pulling into the police department parking lot at the end of his shift the morning of June 3, Kennedy heard a dispatch over his patrol unit radio about a disturbance at Peppers and immediately drove there. On the way to Peppers, he received another dispatch about the same incident which reported that knives and guns were involved. When Kennedy reached Peppers, he parked his patrol unit and, just as he was getting out of it, a group of "big guys" wearing T-shirts with "Peppers" written on them came up to him and excitedly pointed to a driveway in the vicinity, declaring "that guy's got a gun."

Kennedy looked down the driveway and observed appellant walking down it away from him and into the darkness. Although appellant did not appear to be carrying a weapon (he was, in fact, weaponless), Kennedy felt a sense of urgency upon learning that appellant might have a gun and he did not want appellant to leave the area armed. Kennedy also felt nervous about his own safety and that of the group of civilians who were gathering behind him. The driveway was dark and lined by bushes and trees, making it possible for someone to shoot a gun unseen from the darkness. Because of

the lack of cover, Kennedy unholstered his gun, but did not cock it,[1] and got down on one knee. He commanded appellant several times to stop, put his hands on top of his head and drop to his knees. Appellant failed to obey any of Kennedy's commands. Instead, he suspiciously started to walk toward Kennedy. About 25 feet from Kennedy, appellant stopped and crouched down, putting his hands near the bushes lining the driveway and then bringing them up near his boots which were exposed by his crouching position. Since Kennedy had learned during police academy training that weapons can be hidden in boots, he decided to lunge toward appellant and knock him forward to the ground before he could reach for a weapon. At this time, Kennedy was holding his gun in his right hand. When he reached appellant, Kennedy gave him a strong, openhanded push across his shoulders with his left hand, but appellant maintained enough balance to strike up at Kennedy with his right arm and then attempt to grab at Kennedy with both hands.

During this scuffle, Kennedy's gun accidentally discharged into appellant's leg.

Appellant sued respondents for negligence, assault and battery, and intentional and negligent infliction of emotional distress. His complaint alleged that the shooting resulted from the excessive and unjustified use of force by respondent Kennedy upon appellant in attempting to detain him, and Kennedy's actions were the result of inadequate or nonexistent training and supervision by respondent City of Santa Barbara. The primary issue at trial was whether Kennedy's actions in attempting to physically control appellant while holding his gun constituted negligence. The jury decided unanimously that Kennedy was not negligent and did not commit battery.

■ Appellant first objects to the following jury instruction: "You are instructed that the duty owed by the defendant to the plaintiff in this case was to exercise ordinary care, that is the care that would be exercised by a reasonably prudent person in the same or similar circumstance. In this particular instance, however, the defendant was possessed of and using a firearm and a firearm is capable of causing severe injury. For that reason the defendant was required to foresee the possibility of injury and, to avoid it, to exercise a degree of care commensurate with and in proportion to the danger involved, and, in the exercise of ordinary care, the quantum or amount of care exercised *may be greater* than would be necessary if he was not handling a loaded weapon. This is but another way of saying that the amount of care to be exercised by a reasonably prudent person will vary

---

[1] Kennedy testified at trial that police officers are trained never to put their weapon into a cocked position even when firing it. He explained that when a gun is in the cocked position, it can fire with less trigger pull.

with the circumstances, and where the danger of injury is greater the amount of care to be used may be great." (Italics added.)

Appellant argues that, although this instruction was legally correct, it confused the jury by improperly giving it the option of choosing between two standards of care, that of ordinary care or some ill-defined higher degree of care. Appellant contends that this effect was prejudicial because the circumstances indicated that Kennedy created a high risk of danger by choosing to wrestle with appellant with a weapon in his hand, and therefore showed that Kennedy violated his duty to exercise a higher degree of care than ordinary caution. Appellant stresses that, from a public policy standpoint which is "self-evident," the duty of care of a police officer in using a loaded firearm should be "extraordinary" and not simply a degree of care that "may be greater" than ordinary care.

Appellant's arguments have no merit. The jury was correctly informed that the standard of care governing Kennedy's conduct was that of ordinary care. (See *Tucker* v. *Lombardo* (1956) 47 Cal.2d 457, 463 [303 P.2d 1041]; *Jensen* v. *Minard* (1955) 44 Cal.2d 325, 327 [282 P.2d 7].) The instruction was taken almost verbatim from the Supreme Court's decision in *Tucker, supra,* which holds that one who possesses and uses a firearm must exercise the amount of care in handling a loaded weapon as would a reasonably prudent person. (Pp. 462-464.) By stating that the degree of care to be exercised by an ordinary person varies with the circumstances and may be great or high depending on the danger of injury presented, the *Tucker* court did not imply a confusing or contradictory stricter standard of care than ordinary care. The high degree of care required of users of firearms is synonymous with ordinary care under the circumstances. " 'In short, the rules of law governing actions for injuries caused by the discharge of firearms are not different from the rules governing actions for any injuries claimed to have been inflicted by the negligence of the defendant. By reason of the dangerous nature of such weapons, a person handing [*sic*] them is held to a high degree of care.' " (*Jensen* v. *Minard, supra,* pp. 327-328.) In other words, ordinary care in possessing and using a loaded firearm requires, if the circumstances demand it, a high degree of caution. (*Id.,* p. 327.)

There is not even a hint from the record that this instruction confused the jurors, thereby prejudicing appellant. As respondents observe, no juror requested clarification of the instruction, other negligence law instructions more than likely remedied the remote possibility of confusion, and the jury's verdict was unanimous. (See *LeMons* v. *Regents of University of California* (1978) 21 Cal.3d 869, 876 [148 Cal.Rptr. 355, 582 P.2d 946], for factors which may be considered in measuring the prejudicial effect of an

instruction.) Furthermore, the degree of conflict in the evidence was not substantial, centering primarily on the issue of whether Kennedy cocked his gun or not, rather than on the sequence of events. (See *ibid.*)

Further, the prejudice to appellant by the use of the *Tucker* instruction in the normal sense of a miscarriage of justice is not discernible. An instruction that is supported by the evidence and applicable law cannot be said to mislead the jury or constitute error. (*LeMons* v. *Regents of University of California, supra,* 21 Cal.3d 875-876; *Wilkinson* v. *Bay Shore Lumber Co.* (1986) 182 Cal.App.3d 594, 599 [227 Cal.Rptr. 327].)

Appellant's argument that the instruction was prejudicially inadequate because the *Tucker* case did not involve police conduct is equally unavailing. Appellant has cited no legal authority to support his position of the applicability of "extraordinary" care to police officers, nor has he even discussed the policy considerations necessary to effectuate the far-reaching change in the law he requests. He merely asks us to assume that the reasons for creating a separate and distinct, stricter standard of care for police officers in firearm use warrant this change. His point therefore deserves no discussion. (See *People* v. *Dougherty* (1982) 138 Cal.App.3d 278, 282 [188 Cal.Rptr. 123].)

■ Finally, irrespective of the lack of merit in appellant's argument in relation to the *Tucker* instruction, he has waived the issue on appeal; the record reveals appellant requested the instruction. Having requested an instruction to be read to the jury by the trial judge, an appellant cannot assert the giving thereof as a ground for reversal. (*Morris* v. *Frudenfeld* (1982) 135 Cal.App.3d 23, 34 [185 Cal.Rptr. 76].)

Appellant contends there was no invited error since the trial court refused to submit to the jury appellant's instruction regarding a police officer's alleged duty of extraordinary care in handling firearms. However, according to the following portion of the record referred to by appellant, he did request the *Tucker* instruction, regardless of this refusal.

"THE COURT: . . . .

"I'll now give counsel an opportunity to make your record concerning the instructions that have been refused.

"MR. BROWN [appellant's counsel]: Had you decided not to give the instruction right out of that Tucker case?

"THE COURT: Well, no, once I said I would give it, I thought you were going to.

"MR. BROWN: I thought we Xeroxed the page.

"THE COURT: I didn't do it.

"MR. BROWN: I'm sorry. I left it behind. I thought that would be done. I guess it's right over here.

"THE COURT: I'll give that. I've told you that I would give the instruction, if you request it."

Assuming the record does not show appellant requested the instruction, the issue is still waived since appellant did not object to the instruction. "The failure to object to an instruction relieves an appellate court of the obligation to review claimed error therein." (*Wilkinson* v. *Bay Shore Lumber Co., supra,* 182 Cal.App.3d 599.)

■ Appellant's second and final contention of error concerns the trial judge's refusal to give the following instruction requested by appellant: "It is the duty of a [professional] who holds himself or herself out as a specialist in a particular field . . . to have the knowledge and skill ordinarily possessed, and to use the care and skill ordinarily used, by reputable specialists practicing in the same field and in the same or a similar locality and under similar circumstances. [¶] A failure to fulfill any such duty is negligence." (BAJI No. 6.37.1 (7th ed. 1986) p. 216.)

Appellant argues that the failure to give this instruction was prejudicial since it prevented the jury from judging respondent Kennedy's conduct in accordance with standard police policies and practices. Appellant has cited no legal authority for his proposition that this instruction is applicable to police officers, nor has he provided sufficient legal argument why we should apply it here, stating only that police officers should not be judged as "ordinary citizens." ■ Where a point is merely asserted by a party on appeal without any argument or authority for its merit, it is deemed to be without foundation and requires no discussion. (*People* v. *Dougherty, supra,* 138 Cal.App.3d 282.)

■ Further, as respondents note, the instruction has not been utilized to create a special standard of care for police officers. (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 518, pp. 2783-2784; *id.* (1982 supp.) § 518, pp. 264-265.) Moreover, such an instruction would not have been based on the issues framed by the pleadings. Appellant's complaint did not charge Kennedy with possessing the superior knowledge and skill of his profession. To the contrary, the complaint alleged that "[t]he actions of defendant Kennedy were the result of grossly inadequate or nonexistent

training and supervision of police officers by defendant City of Santa Barbara."

Assuming the failure to give the instruction was error, no prejudice to appellant resulted. Respondents cogently point out that testimony was provided concerning the appropriateness of Kennedy's actions according to police training and practices which, along with the *Tucker* and the other negligence law instructions given in this case, enabled the jury to measure Kennedy's conduct against the care and skill an ordinary police officer in similar circumstances would exercise.

The judgment is affirmed.

Gilbert, J., and Abbe, J., concurred.