[No. B036882. Second Dist., Div. Four. May 20, 1992.]

PANFILO LUA, Plaintiff and Respondent, v.
SOUTHERN PACIFIC TRANSPORTATION CO., Defendant and
Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III and IV.

## COUNSEL

Morris, Polich & Purdy, Robert S. Wolfe, Douglas J. Collodel and Kathleen A. Kelleher for Defendant and Appellant.

Davis & Thomas, Joseph Daniel Davis and Charlotte E. Costan for Plaintiff and Respondent.

## OPINION

**EPSTEIN, J.**—Southern Pacific Transportation Co. has appealed from a judgment against it in favor of respondent Panfilo Lua. The dispute between the parties arises out of the injuries Mr. Lua sustained when he tried to climb over appellant's train, which was stopped and blocking a public grade crossing.[1] The case was tried to a jury, which found for the plaintiff and awarded damages in the amount of $309,400.

Southern Pacific contends that the trial court erred in instructing the jury that a violation of General Order No. 135 of the Public Utilities Commission (P.U.C.) (see 77 Cal.P.U.C. at p. 323), which regulates the length of time a stopped train may block a public grade crossing, constitutes negligence per se. The railroad also contends that the judgment should be reversed due to the misconduct of plaintiff's counsel. Finally, Southern Pacific asks us to reconsider and overrule the decision of another division of this district

---

[1] A "grade crossing" is "[a] place where a railroad is crossed at grade by a public or private road." (See Black's Law Dict. (5th ed. 1979) p. 628, col. 1.)

following an earlier appeal in this case, and on that basis direct the entry of judgment in its favor.

Because we agree with Southern Pacific's first contention and reverse on that ground, we need not reach its contentions regarding attorney misconduct. We decline to depart from established precedent regarding the law of the case and revisit the issues resolved in the earlier appeal.

FACTUAL AND PROCEDURAL SUMMARY

On September 28, 1977, the date of the incident, Panfilo Lua was an unemployed farm worker. He had traveled from Merced to Los Angeles looking for work. Having heard that a cannery was hiring, he took a bus to the vicinity of the cannery and began to walk the remaining blocks, intending to arrive before 8 p.m. It was getting dark by the time he got off the bus.

Plaintiff walked to the railroad tracks at the intersection of San Pablo Avenue and Valley Boulevard. He was unable to cross because the intersection was blocked by a stationary train. The traffic control crossing arms were up, and plaintiff saw no flashing lights and heard no bells. Plaintiff did not know how to use a watch and could not tell time, but he estimated at trial that he waited for 10 or 15 minutes before he climbed onto the train in an attempt to cross. As he put his foot on a coupler the train began to move. Plaintiff's injury resulted.

Plaintiff filed his complaint in August of 1978, and the matter was tried to a jury in July of 1983. The jury found that the defendant was negligent and the plaintiff contributorily negligent. Damages were assessed at $350,000. Ninety percent of the fault was apportioned to Southern Pacific and 10 percent to the plaintiff. An appeal (B007114) from the judgment was heard by Division One of this court. In an unpublished opinion issued in August 1985, that division reversed the judgment and remanded the matter for a new trial on all issues.[2]

The case was retried in June of 1988. This appeal follows.

---

[2]We take judicial notice of that decision, and base this portion of the statement of facts on matters contained therein. (See Evid. Code, § 452.)

DISCUSSION

I

As pertinent here, P.U.C. General Order No. 135[3] provides: "1. . . . . Except as provided in Paragraph 5, a public grade crossing which is blocked by a stopped train, other than a passenger train, must be opened within 10 minutes, unless no vehicle or pedestrian is waiting at the crossing. Such a cleared crossing must be left open until it is known that the train is ready to depart. When recoupling such a train at the crossing, movement must be made promptly, consistent with safety. [¶] 2. . . . . Switching over public grade crossings should be avoided whenever reasonably possible. If not reasonably possible, such crossings must be cleared frequently to allow a vehicle or pedestrian to pass and must not be occupied continuously for longer than 10 minutes unless no vehicle or pedestrian is waiting at the crossing." (Dec. No. 83446, Case No. 8949, *supra*, 77 Cal. P.U.C. at pp. 323-324.)

The trial court instructed the jury that "The Public Utilities Commission of the State of California has ordered that each railroad corporation operating in the State of California shall observe the following regulations in conducting operations on and across public grade crossings." The instruction went on to quote the subsections of Order No. 135 recited above. The court further instructed that "If you find that the defendant to this action violated the Public Utilities Commission Order just read to you and that such violation was a legal cause of injury to another, you will find that such violation was negligence."

Evidence Code section 669 codifies the doctrine of negligence per se based on violation of a statute or regulation. (See *Capolungo* v. *Bondi* (1986) 179 Cal.App.3d 346, 349 [224 Cal.Rptr. 326].) The section provides, in pertinent part, "(a) The failure of a person to exercise due care is presumed if: [¶] (1) [A person] violated a . . . regulation of a public entity; [¶] (2) The violation proximately caused . . . injury . . . ; [¶] (3) The . . . injury resulted from an occurrence of the nature which the . . . regulation was designed to prevent; and [¶] (4) The person suffering the . . . injury . . . was one of the class of persons for whose protection the . . . regulation was adopted." (Evid. Code, § 669.)

In order for a claim of negligence per se to succeed, all four elements must be shown. The first two are matters for the trier of fact; the second two are

---

[3]We have notified the parties of an intention to take judicial notice of all matters contained in Decision No. 83446, Case No. 8949 (1974) 77 Cal. P.U.C. 320. Having done so, and having invited and received their comments, we now take judicial notice of this decision. (See Evid. Code, § 455, subd. (a).)

to be determined by the court as a matter of law. (*Capolungo* v. *Bondi, supra,* 179 Cal.App.3d at pp. 349-350.)

■ We find that plaintiff's injury did not result from an occurrence the regulation was designed to prevent.

Respondent has cited several cases for the proposition that the California rule is that violation of a regulation limiting the time which a railroad may block a grade crossing is negligence per se. None is persuasive authority. One of them, *Hofstadt* v. *Southern Pac. Co.* (1931) 1 P.2d 470, was decertified for publication and is not citable as precedent. A second case, *Hanlon D. & S. Co.* v. *Southern Pac. Co.* (1928) 92 Cal.App. 230 [268 P. 385], involved an injury caused when a stopped train delayed fire trucks responding to an alarm. The final California case cited on this point, *Matoza* v. *Southern Pacific Co.* (1922) 59 Cal.App. 636 [211 P. 252], also concerned injury caused by delay, and did not involve a statute or ordinance, nor an issue of negligence per se.

Both parties argue by analogy to California cases reviewing a variety of statues and ordinances. We find none of those analogies enlightening, and turn instead, as those courts did, to the history of the regulation we are reviewing. (See *Capolungo* v. *Bondi, supra,* 179 Cal.App.3d at pp. 350-352.)

Prior to promulgating General Order No. 135, the P.U.C. heard from interested parties and solicited written comments. In findings of fact resulting from that process, the P.U.C. found that "1. The blocking of public grade crossings interferes with the freedom of access of the public using the streets and highways and can result in substantial traffic problems for the public agencies responsible for the control of traffic upon such streets and highways. [¶] 2. Public convenience and necessity require regulations which will require the clearing of crossings so as to result in the minimum delay to the public. . . . [¶] 4. The occupancy and blocking of public grade crossings by railroads and the clearing of such crossings by railroads necessarily involve the safety of railroad operations. . . ." (Dec. No. 83446, Case No. 8949, *supra,* 77 Cal. P.U.C. at p. 322.)

These findings are addressed to the free flow of traffic and the harm which might be caused by delay. And, since section 5 of the order allows longer delays for a variety of reasons without requiring special precautions for the

safety of those blocked by the train, it is apparent that the safety of passersby is not addressed by this order.[4]

The weight of other authority is in accord with this conclusion. "Statutes which limit the time during which railway trains may obstruct crossings usually are held to be intended to prevent delays of traffic, and so may give rise to an action for damages resulting from such delay, but afford no protection against personal injuries caused by the position of the train." (Prosser & Keeton, Torts (5th ed. 1984) § 36, p. 225.)

In *Fox* v. *Illinois Cent. R. Co.* (1941) 308 Ill.App. 367 [31 N.E.2d 805, 808-809], the Illinois Appellate Court held that the purpose of a statue prohibiting trains from remaining on the tracks for longer than 10 minutes was the prevention of traffic delay, and that it was not enacted to protect drivers from damage caused by collision with a stopped railroad car. (See also *Dunn* v. *Baltimore & Ohio R. Co.* (1989) 127 Ill.2d 350 [130 Ill.Dec. 409, 537 N.E.2d 738, 746-747] [similar].)

*Peigh* v. *Baltimore & O. R. Co.* (D.C. Cir. 1953) 204 F.2d 391, 394 [92 App.D.C. 198, 44 A.L.R.2d 671], is to the same effect. In that case, the court concluded that a regulation similar to the one at issue here was intended to expedite traffic and encourage commerce, and was not directed at the safety of drivers.

The cases cited by respondent to the contrary are not on point. They establish, at best, that in some jurisdictions a railroad may have a duty to signal, with lights or otherwise, before a stopped train begins to move. (See, e.g., *Dodwell* v. *Missouri Pacific Railroad Company* (Mo. 1964) 384 S.W.2d 643 [11 A.L.R.3d 1156]; *Walker* v. *Southern Ry., Carolina Division* (1907) 77 S.C. 161 [57 S.E. 764], *Texas & N. O. R. Co.* v. *Owens* (Tex. Ct. App. 1932) 54 S.W.2d 848.)

The California decisions agree that the per se effect of a statute is limited to the conduct the statute or regulation was designed to prevent. (See, e.g., *Mark* v. *Pacific Gas & Electric Co.* (1972) 7 Cal.3d 170, 183 [101 Cal.Rptr. 908, 496 P.2d 1276] [ordinance prohibiting persons from extinguishing street lights not designed to prevent death by electrocution]; *Atkins* v. *Bisigier* (1971) 16 Cal.App.3d 414, 422 [94 Cal.Rptr. 49] [regulations requiring deep

---

[4]Appellant additionally argues that the instruction was erroneous because it did not include the provisions of section 5, noted above, and therefore did not ask the jury to find as a basic fact that the delay was not one which was permitted. Respondent argues that it was the appellant's burden to produce evidence on this point, as a rebuttal to the Evidence Code section 669 presumption. We need not and do not decide that issue, since we conclude that the regulation does not inure to the benefit of individuals in respondent's position.

end of swimming pool to be marked designed to prevent drowning accidents, not diving accidents]. See also Prosser & Keeton, Torts, *supra*, § 36, p. 222, ". . . courts . . . have been careful not to exceed the purpose which they attribute to the legislature.")

It follows that P.U.C. Order No. 135 is not a basis for per se liability of the railroad to a pedestrian who chooses to climb on a train that is stopped at an intersection. The trial court erred in instructing that it was. It remains for us to consider whether this error is prejudicial.

## II

■ "Generally speaking, if it appears that error in giving an improper instruction was likely to mislead the jury and thus to become a factor in its verdict, it is prejudicial and ground for reversal. [Citation.] To put it another way [w]here it seems probable that the jury's verdict may have been based on the erroneous instruction, prejudice appears and this court should not speculate upon the basis of the verdict. [Citations.]" (*Henderson* v. *Harnischfeger Corp.* (1974) 12 Cal.3d 663, 670 [117 Cal.Rptr. 1, 527 P.2d 353], internal quotation marks omitted; *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 767 [206 Cal.Rptr. 354, 686 P.2d 1158].)

Other theories of liability were presented at the trial, but it is apparent from a review of the record that this instruction probably misled the jury. A negligence per se instruction is strong medicine, designed to have an impact on the jury. Respondent relied heavily on the instruction in argument, a factor we consider in measuring the prejudicial effect of a jury instruction. (See *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.*, *supra*, 36 Cal.3d at p. 771.) Counsel used a blowup of the instruction, referred to it as a "key instruction," and told the jurors that if they found that the defendant had blocked the intersection for more than 10 minutes "Mr. Lua is entitled to your verdict."

Since the jury returned a general verdict, we cannot determine the exact basis of its decision, but it is unlikely that the jury ignored the instruction and more than probable that the verdict was based on the erroneous instruction. For that reason, the judgment must be reversed.

■ Respondent argues that by failing to object to the instruction Southern Pacific waived its right to assert instructional error on appeal. This argument also fails. Instructions are deemed excepted to, and the claim of error was thus preserved. (Code Civ. Proc., § 647, *Enis* v. *Specialty Auto*

*Sales* (1978) 83 Cal.App.3d 928, 940 [148 Cal.Rptr. 255].) *Gamboa* v. *Atchison, Topeka & Santa Fe Ry. Co.* (1971) 20 Cal.App.3d 61 [97 Cal.Rptr. 471], cited by respondent for a rule to the contrary, is based on federal practice, and has no application here.[5]

### III-IV*

. . . . . . . . . . . . . . . . . . . . . . . . .

### CONCLUSION

The accident that gave rise to this litigation occurred in September 1977, and the lawsuit commenced in August of the following year. Now, almost 15 years after the accident, we must reverse the case for a third trial. Given the gravity of the error, we have no other course. Hopefully, this case will soon proceed to a final resolution.

### DISPOSITION

The judgment is reversed and remanded for a new trial on all issues. Each party to bear its own costs on appeal.

Woods (A. M.), P. J., and Stephens, J.,† concurred.

---

[5]Respondent also cited *Wilkinson* v. *Bay Shore Lumber Co.* (1986) 182 Cal.App.3d 594, 599 [227 Cal.Rptr. 327, 61 A.L.R.4th 111], for the proposition that failure to object to an instruction relieves an appellate court of the obligation to review any claimed error. *Wilkinson* cites *Gamboa* for this proposition, but fails to note that *Gamboa* was applying federal rules. Further, the statement was dictum since the court assumed for purposes of its discussion that an objection had been raised.

*See footnote, *ante*, page 1897.

†Retired Associate Justice of the Court of Appeal, Second District, sitting under assignment by the Chairperson of the Judicial Council.