221 F.3d 1127 (9th Cir. 2000)
 CIRILO DURAN; ZENAIDA DURAN, Plaintiffs-Appellants,
v.
CITY OF MAYWOOD; WILLIAM B. WALLACE, individually and as a peace officer; GIL BOWMAN, individually and as Chief of Police; RICK CURIEL, Defendants-Appellees.
 No. 97-55262
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted February 10, 2000
Filed July 11, 2000
 
 [Copyrighted Material Omitted]
 Thomas E. Beck, Los Angeles, California, for the plaintiff-appellants.
 Thomas E. Francis, Wood, Bohm & Francis, Newport Beach, California, for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California
 Before: Pregerson, Ferguson, and McLane Wardlaw, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiffs Cirilo and Zenaida Duran filed a civil rights lawsuit against Officer Rick Curiel and the City of Maywood ("Defendants") after Officer Curiel shot and killed their son. The case went to trial and the jury returned a verdict for the Defendants. On appeal, the Plaintiffs claim that the district court erred when it refused to give three jury instructions and when it excluded evidence of another shooting Officer Curiel was involved in three days after the Duran shooting. Because we agree with the district court's rulings on each of these issues, we AFFIRM.
 
 I. BACKGROUND:
 
 2
 At approximately 6:30 a.m., on August 15, 1994, Officer Curiel and Officer William Wallace responded to a dispatch call regarding loud music and shots fired in the vicinity of 52nd and Carmelita Street in the City of Maywood. When the officers arrived at the location, they heard music coming from inside the Duran's garage. The officers pulled out their firearms and silently walked up the driveway toward the source of the music.
 
 
 3
 As they approached, the officers heard the sound of a person racking a pistol. Immediately upon hearing this sound, Officer Wallace yelled to his partner, "He just racked one." At the same moment, Officer Curiel saw Eloy Duran emerge from behind a pickup truck in the garage holding a weapon. Officer Curiel testified that he shouted in Spanish,"Police, drop the gun," but Duran ignored Officer Curiel's command and pointed his weapon at the officers. Officer Curiel then fired four shots at Duran, causing him to fall to the floor. When Office Curiel approached Duran to disarm him, Duran pointed the gun at him. Officer Curiel stated that he shouted loudly, "Don't, don't, don't." When Duran failed to respond, Officer Curiel fired two more rounds into Duran's chest. At this point, Duran stopped moving and Officer Curiel removed the gun.
 
 
 4
 Following this incident, Duran's parents filed suit against Officer Curiel and the City of Maywood under 42 U.S.C. S 1983, claiming that the Defendants' actions violated the Fourth and Fourteenth Amendments. Prior to trial, the Defendants filed a motion in limine in which they sought to exclude evidence of another shooting that Officer Curiel was involved in three days after the Duran shooting. The district court granted the Defendants' motion, stating that under Federal Rule of Evidence 403, "the marginally probative value of the evidence is substantially outweighed by the danger of unfair prejudice to Defendants."
 
 
 5
 At trial, the Plaintiffs requested that the district court read three instructions to the jury. The first involved a theory of liability under the Fourth Amendment; the second involved a rebuttable presumption under the California Home Protection Bill of Rights; and the third involved the standard of care required for handling a gun. The district court rejected each of the Plaintiffs proposed instructions.
 
 
 6
 After a two week trial, the jury returned a verdict for the Defendants. On appeal, the Plaintiffs claim the district court erred when it failed to give the three jury instructions and when it excluded evidence of Officer Curiel's subsequent shooting.
 
 II. DISCUSSION:
 A. Standard of Review:
 
 7
 "Jury instructions must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading." Gilbrook v. City of Westminster, 177 F.3d 839, 860 (9th Cir.), cert. denied, 1205 S. Ct. 614 (1999) (quoting Chuman v. Wright, 76 F.3d 292, 294 (9th Cir. 1996)). A district court's formulation of the jury instructions is reviewed for "abuse of discretion." Id. If, however, "the instructions are challenged as a misstatement of the law, they are then reviewed de novo." Id. (quoting Mockler v. Multnomah County, 140 F.3d 808, 812 (9th Cir. 1998)).
 
 
 8
 A district court's evidentiary rulings are reviewed for abuse of discretion. E.E.O.C. v. Pape Lift, Inc., 115 F.3d 676, 680 (9th Cir. 1997). "To order reversal on the basis of an erroneous evidentiary ruling, we must find not only that the district court abused its discretion but also that the error was prejudicial." Gilbrook, 117 F.3d at 858 (quoting Heyne v. Caruso, 69 F.3d 1475, 1478 (9th Cir. 1995)).
 
 B. Alexander Instruction:
 
 9
 The Plaintiffs' first argument is that the district court erred when it refused to give an Alexander instruction.[1] This instruction is based on the case of Alexander v. City and County of San Francisco, 29 F.3d 1355, 1366 (9th Cir. 1994), and applies when there is evidence that a police officer's use of excessive and unreasonable force caused an escalation of events that led to the plaintiff's injury. Here, the Plaintiffs claim that this instruction should have been given because the manner in which the two officers approached the Duran residence "virtually assured a police shooting." Specifically, they point to the fact that the officers walked up the driveway with their guns drawn and never announced their presence. The Plaintiffs claim that this "stealth" approach "raised the likelihood" that "whomever they surprised would point a gun at them." Accordingly, they argue the district court erred when it refused to give the Alexander instruction. We disagree.
 
 
 10
 Contrary to the Plaintiffs' assertions, the officers did not make a "stealth" approach. Officer Curiel testified that he and Officer Wallace arrived at the scene in marked police cars and that both men were wearing police uniforms. They testified further that he and Wallace met on the sidewalk in front of the Duran's residence and walked, side-by-side, up the driveway toward the music in the garage. Although Plaintiffs are correct in pointing out that the officers had their guns drawn and did not announce their presence, these actions were entirely reasonable given that they were responding to a call that shots had been fired.
 
 
 11
 In order to justify an Alexander instruction, there must be evidence to show that the officer's actions were excessive and unreasonable, and that these actions caused an escalation that led to the shooting. Here, no such facts exist. The two uniformed officers simply walked up a driveway silently with their guns drawn. Contrary to the Plaintiffs' assertions, nothing about these actions should have provoked an armed response. As a result, the district court did not abuse its discretion in denying the Plaintiffs' request to give an Alexander instruction.
 
 
 12
 C. California Home Protection Bill of Rights Instruction:
 
 
 13
 The Plaintiffs' second claim is that the district court erred when it refused to give an instruction regarding California Penal Code S 198.5, the so-called "California Home Protection Bill of Rights". The proposed instruction states in pertinent part that "[a]ny person using force intended or likely to cause death or great bodily injury within his or her residence shall be presumed to have held a reasonable fear of imminent peril of death or great bodily injury . . . when that force is used against another person . . . who unlawfully and forcibly entered the residence . . ." Cal. Penal CodeS 198.5. This instruction creates a rebuttable presumption that a homeowner acts reasonably when he or she uses force against a person who "unlawfully and forcibly" enters his or her home.
 
 
 14
 Plaintiffs argue that the district court erred when it decided not to give this instruction because, from the defendant's perspective, the officers' appeared to be armed trespassers who were on his property illegally. Under these circumstances, the Plaintiffs claim that Duran is entitled to a presumption that his armed response was reasonable. We disagree.
 
 
 15
 The "unlawful and forcible entry into a residence" requirement under S 198.5 is evaluated based on what a "reasonable person in [Duran's] position would have believed."
 
 
 16
 People v. Curtis, 30 Cal. App. 4th 1337, 1362 (1994). In this case, a reasonable person in Duran's position would not have believed that the officers had "unlawfully and forcibly" entered his residence. Although it is true that the officers did not identify themselves as they walked up the driveway, this point is largely negated by the fact that they arrived in marked police cars and were wearing police uniforms. Furthermore, the act of walking up a person's driveway cannot reasonably be interpreted as forcibly entering a residence. See People v. Brown, 6 Cal. App. 4th 1489, 1495 (1992) (ruling that entry onto an unenclosed front porch is not within the purview of Section 198.5). As a result, we find that the district court did not abuse its discretion when it refused to give this instruction.
 
 D. Tucker Instruction
 
 17
 The Plaintiffs' third claim is that district court erred when it refused to give their proposed instruction regarding the heightened duty of care that applies to individuals who handle firearms. The Plaintiffs' proposed instruction reads as follows:
 
 
 18
 The standard of care required of a reasonable person when dealing with firearms is so great that a slight deviation therefrom constitutes negligence. Ordinary care requires that one using firearms use extreme caution. As firearms are extraordinarily dangerous, a person who handles such a weapon is bound to use extraordinary care to prevent injury to others, and is held to a strict accountability for a want of such care. One who causes injury to another by discharging a firearm, must in order to excuse himself from liability, show that he was absolutely without fault.
 
 
 19
 The Plaintiffs claim that this instruction should have been given because it is "supported by, and is a direct quote from, Tucker v. Lombardo, (1957) 47 Cal. 2d 457. " We disagree.
 
 
 20
 Although some of the Plaintiffs' proposed language appeared in the intermediate appellate court opinion, Tucker v. Lombardo, 298 P.2d 562, 566-67 (Cal. Ct. App. 1956), this decision was subsequently vacated and reversed six months later by the California Supreme Court. Tucker v. Lombardo, 47 Cal. 2d 457 (Cal. 1956).
 
 
 21
 In addition, the Plaintiffs misstate the law when they claim that individuals are held to a heightened or extraordinary standard of care when they handle a firearm. The standard of care for an individual handling a firearm is the same as it is for other negligence actions -"ordinary care under the circumstances." Tucker, 47 Cal. 2d at 463; Miller v. Kennedy, 196 Cal. App. 3d 141, 145 (Cal. Ct. App. 1987); see also Jensen v. Minard, 44 Cal. 2d 325, 328 (1955) (noting that "the rules of law governing actions for injuries caused by the discharge of firearms are not different from the rules governing actions for any injuries claimed to have been inflicted by the negligence of the defendant").
 
 
 22
 The district court recognized these principles and instructed the jury as follows:
 
 
 23
 Ordinary or reasonable care is that care which law enforcement officers of ordinary prudence would use in order to avoid injury to themselves or others under circumstances similar to those shown by the evidence. Ordinary care is not an absolute term, but a relative one . . . . The amount of caution required of a law enforcement officer in the exercise of ordinary care depends upon the conditions apparent to that person or that should be apparent to a reasonably prudent law enforcement officer under circumstances similar to those shown by the evidence.
 
 
 24
 Because this instruction accurately reflected California negligence law and the Plaintiffs' proposed instruction did not, the district court's decision to reject the Plaintiffs' instruction was certainly not an abuse of discretion.
 
 
 25
 E. Exclusion of Evidence of Subsequent Shooting:
 
 
 26
 Finally, the Plaintiffs contend that the district court erred when it refused to allow them to introduce evidence about another shooting Officer Curiel was involved in three days after the Duran shooting. The admissibility of "other act" evidence is governed by Federal Rule of Evidence 404(b), which provides:
 
 
 27
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 28
 We have held that "other act " evidence is admissible under Rule 404(b) if the following test is satisfied: (1) there must be sufficient proof for the jury to find that the defendant committed the other act[2]; (2) the other act must not be too remote in time; (3) the other act must be introduced to prove a material issue in the case; and (4) the other act must, in some cases, be similar to the offense charged. See BiboRodriguez, 922 F.2d 1398, 1400 (9th Cir. 1991); United States v. Miller, 874 F.2d 1255, 1268 (9th Cir. 1989). Even if all four conditions are met, the evidence may still be excluded if under Rule 403, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.[3] Id.
 
 
 29
 In this case, the district court laid out this test and then stated that even if all the factors under Rule 404(b) were met, it believed that the evidence should be excluded under Rule 403 for two independent reasons. First, "the marginally probative value of this evidence is substantially outweighed by the danger of unfair prejudice." Second, in order to admit evidence of the other shooting, the court would have to have a "full-blown trial within this trial." The court noted that according to one of the Defendants' attorneys, an inquiry into the second incident would require "the testimony of eighteen to twenty-three witnesses, as well as no less than four experts." The court therefore concluded that "the marginal value of the evidence is "substantially outweighed by the danger of . . . confusion of the issues, or misleading the jury, or by consideration of undue delay, [and] waste of time." Although we find the similarity between the two shootings troubling, we do not believe that the district court's decision to exclude the evidence amounts to an abuse of discretion.
 
 III. CONCLUSION:
 
 30
 For the reasons set forth above, we reject the Plaintiffs claim that the district court erred when it denied the three jury instructions and excluded evidence of a second shooting. Accordingly, we AFFIRM.
 
 
 
 Notes:
 
 
 [1]
 Plaintiffs proposed instruction reads as follows:
 "If you find that Officer Curiel recklessly, intentionally and/or unreasonably created a situation where the accidental or purposeful use of deadly force upon Eloy Duran would become likely, such conduct would be a violation of Eloy Duran's Fourth Amendment right to be free from unreasonable seizures."
 
 
 [2]
 The Ninth Circuit has held that "other acts" in Rule 404(b) includes both prior and subsequent acts. Bibo-Rodriguez , 922 F.2d at 1400.
 
 
 [3]
 Federal Rule of Evidence 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.